[Cite as *State v. Steele*, 2011-Ohio-5479.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-100637 |
| | | TRIAL NO.   B-0903495 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| JULIAN STEELE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  October 28, 2011

**Don White**, Clermont County Prosecuting Attorney, and **Daniel J. Breyer,** Special Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Gloria L. Smith*, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

Per Curiam.

**{¶1}** This case presents an issue of first impression: what is the proper jury instruction concerning "privilege" when a police officer is charged with abduction arising from an alleged abuse of the power to arrest? That question also presents a difficult challenge to the court to balance the realities of police investigation and the inherent decision making that accompanies it with the legal safeguards afforded each citizen.

### Facts

**{¶2}** In the course of investigating a series of robberies, defendant-appellant detective Julian Steele arrested seventeen-year-old Jerome Maxton and interrogated him. Steele later charged Maxton. As a result of the charges, Maxton was incarcerated in a juvenile detention facility pending further action on his case. Nine days later, Maxton was released at the direction of an assistant Hamilton County prosecuting attorney.

**{¶3}** A subsequent investigation revealed that Steele may have arrested Maxton, coerced a false confession from him, and incarcerated him in order to compel Maxton's mother's cooperation with the investigation. There was evidence that Steele believed that Alicia Maxton, Maxton's mother, had been involved in the robberies or knew who had been involved, and that Steele thought that Alicia would supply information to exonerate her son. There were also allegations that Steele had forced sexual relations with Alicia, promising her that he would help to secure Maxton's release from juvenile detention.

**{¶4}** Following the investigation, the grand jury indicted Steele on charges of abduction, intimidation, extortion, rape, and sexual battery. The case was tried to

a jury. Steele claimed he was innocent of all charges. He argued that the arrest was legal based on the facts known to him at the time. He also contended that he had not coerced a false confession from Maxton, and that therefore the complaint and Maxton's subsequent incarceration were valid, as well. Finally, Steele argued that his sexual relations with Alicia Maxton were consensual.

{¶5} The jury found Steele guilty of two counts of abduction and one count of intimidation, each with an accompanying firearm specification, and acquitted him on all other charges. The trial court sentenced Steele to five years' incarceration and five years' community control. For the following reasons, we affirm in part, reverse in part, and remand this case for further proceedings.

## The Contested Jury Instruction

{¶6} Steele's fourth assignment of error is dispositive of a number of issues in this case. In it, he alleges that the court's jury instruction on the abduction counts was erroneous. Because defense counsel did not object to these instructions, we review Steele's argument using a plain-error analysis.[1]

{¶7} A trial court must give the jury all relevant instructions that are necessary for the jury to weigh the evidence and to discharge its duty as the fact-finder.[2] And while the trial court has discretion in fashioning the jury's charge, the charge must accurately reflect the law.[3]

{¶8} In pertinent part, the abduction statute provides that "[n]o person, *without privilege to do so* shall knowingly * * * (1) By force or threat, remove another from the place where the other person is found; (2) By force or threat,

---

[1] See Crim.R. 52(B).
[2] *State v. Comen* (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, paragraph two of the syllabus.
[3] See id.; see, also, *State v. Wolons* (1989), 44 Ohio St.3d 64, 541 N.E.2d 443.

restrain the liberty of another person under circumstances that * * * places the other person in fear [emphasis added]."[4]

**{¶9}** Here, the trial court instructed the jury that "privilege" was "an immunity, license, or right conferred by law * * * or arising out of status, position, office or relationship * * *." The jury was further instructed that when an "arrest is without a judicial order or probable cause to arrest, it is an illegal arrest." The jury was told that probable to arrest exists "when an officer has knowledge of existing facts and circumstances which would warrant a prudent police officer in believing that a crime was committed and that the person to be arrested has committed the crime." In essence, the jury was instructed that an officer loses the privilege to arrest when the arrest is made without probable cause.

**{¶10}** Steele claims that this instruction was incorrect because the abduction statute should not apply to police officers since other remedies exist to deter police misconduct. We reject Steele's argument based on the plain language of the statute.[5] There is no exemption for police officers in R.C. 2905.02. And there is no legal precedent to support the contention that the availability of other remedies is a defense to criminal prosecution. While enforcing the law, the police must also obey it.

**{¶11}** The state urges the court to affirm the instruction. For the following reasons, we reject the state's position, as well.

---

[4] R.C. 2905.02(A)(1) and (A)(2).
[5] See *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 1996-Ohio-291, 660 N.E.2d 463; *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105-106, 304 N.E.2d 378; *Carter v. Youngstown* (1946), 146 Ohio St. 203, 65 N.E.2d 63, paragraph one of the syllabus.

## Privilege and Legislative Intent

**{¶12}** Determining whether the jury was instructed correctly turns on the meaning of "privilege" in R.C. 2902.05 as it pertains to the power to arrest. "Privilege" is defined as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity."[6]

**{¶13}** A police officer's right to arrest without a warrant is conferred by statute,[7] and is curtailed by the Fourth Amendment. In construing the meaning of this "privilege" within the abduction statute, we must give "effect to the legislature's intention."[8] We note that the legislature "will not be presumed to have intended to enact a law producing unreasonable or absurd consequences."[9] It is the court's duty to construe the statute, if possible, to avoid such a result.[10]

**{¶14}** Because probable-cause determinations are far from clear cut, we do not believe that the legislature intended a police officer to be guilty of abduction anytime an arrest is made without probable cause. Whether probable cause existed in a given case may not be finally adjudicated until years after the fact with the aid of lawyers, judges, and hindsight. The volume of Fourth Amendment jurisprudence attests to this fact. Given the complexities sometimes involved in a probable-cause determination, and the obvious chilling effect that the threat of criminal indictment would have on effective police work, the trial court's instruction about when an officer loses his privilege to arrest creates an unreasonable result. We therefore find

---

[6] R.C. 2901.01(12).
[7] See Crim.R. 2(J); R.C. 2935.03.
[8] See *Carter*, supra.
[9] *State ex rel. Cooper v. Savord* (1950), 153 Ohio St. 367, 92 N.E.2d 390, paragraph one of the syllabus; see, also, *State v. Nickles* (1953), 159 Ohio St. 353, 112 N.E.2d 531, paragraph one of the syllabus.
[10] *Savord*, supra.

the state's position to be without merit. The jury instruction should have been more narrowly tailored.

### The Parameters of the Privilege to Arrest

**{¶15}** The question of when a police officer should be held personally responsible for an improper arrest has been litigated in the context of civil-rights claims. In this regard, the United States Supreme Court has recognized the same concerns that we must balance here—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[11] We therefore turn to Section 1983[12] case law for guidance.

**{¶16}** For a wrongful-arrest claim to succeed under Section 1983, a plaintiff must prove that the arresting officer lacked probable cause.[13] But even in the absence of probable cause, officers who "reasonably but mistakenly conclude that probable cause is present" are immune from suit.[14] This doctrine, known as "qualified immunity" acknowledges that "reasonable mistakes can be made as to the legal constraints on particular police conduct" and should not be penalized.[15] Qualified immunity "shields an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."[16]

**{¶17}** We are persuaded by these cases to the extent that they acknowledge that a police officer should not be penalized for reasonable mistakes. But we do not

---

[11] *Pearson v. Callahan* (2009), 555 U.S. 223, 231, 129 S.Ct. 808.
[12] Section 1983, Title 42, U.S. Code.
[13] *Miller v. Sanilac Cnty.* (C.A.6, 2010), 606 F.3d 240, 250; *Brooks v. Rothe* (C.A.6, 2009), 577 F.3d 701, 706, quoting *Fridley v. Horrighs* (C.A.6, 2002), 291 F.3d 867, 872.
[14] *Hunter v. Bryant* (1991), 502 U.S. 224, 227, 112 S.Ct. 534, citing *Anderson v. Creighton* (1987), 483 U.S. 635, 641, 107 S.Ct. 3034; see, also, *Harris v. Bornhorst* (C.A.6, 2008), 513 F.3d 503, 511.
[15] *Everson v. Leis* (C.A.6, 2009), 556 F.3d 484, 494 (citations omitted).
[16] *Pearson*, supra.

adopt the test for "qualified immunity" discussed in the cases cited above because this test is an objective test. This court has already determined that "the existence, nature and scope of a privilege claimed in any particular instance depend on the circumstances surrounding the actor, matters primarily within the grasp of the actor himself."[17] So, a more subjective test is mandated.[18] The question literally becomes, in the vernacular, "what did the officer know and when did he or she know it?"

### The Proper Jury Instruction

{¶18} The jury in this criminal case should have been instructed that a police officer loses the privilege to arrest when that officer knows, at the time of the arrest, that the person to be arrested had not committed the crime or that no crime had been committed.

{¶19} Thus, criminal liability for abduction is predicated on the element of the officer's knowledge that he or she had no probable cause to make the arrest. This standard reaffirms the long standing rule that a good-faith mistake by an officer is not enough to cause a loss of the privilege anticipated by the statute and restated in the Section 1983 cases cited above.[19]

### The Error was Plain Error

{¶20} In *State v. Barnes*,[20] the Ohio Supreme Court set forth a three prong test for the invocation of the plain-error rule. First, there must be an error.[21] Second, the error must be "obvious."[22] And third, the error must have affected a

---

[17] *State v. Gordon* (1983), 9 Ohio App.3d 184, 186, 458 N.E.2d 1277.
[18] See *Morisette v. United States* (1952), 342 U.S. 246, 250-252, 72 S.Ct. 240.
[19] Cf. *United States v. Leon* (1984), 468 U.S. 897, 906, 104 S.Ct. 3405.
[20] 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240.
[21] Id.
[22] Id.

substantial right—meaning that the error must have affected the outcome of the trial.[23]

{¶21} We have already determined that there was an error in the jury instruction. The erroneous instruction was "obvious" to the extent that the instruction criminalized the reasonable exercise of police power. And this error affected Steele's due-process rights. [24] It relieved the state of its burden to prove all elements of abduction beyond a reasonable doubt.[25] Because Steele's defense centered on the reasonableness of his actions at the time that he had allegedly abducted Maxton, the error in the instruction was sufficient to have affected the outcome of the trial.

{¶22} In our discretion, we find that invocation of the plain-error rule is necessary in this case to avoid a manifest miscarriage of justice.[26] Steele's fourth assignment of error is therefore sustained. His abduction convictions are reversed, and the counts are remanded for further proceedings.[27]

## Weight and Sufficiency

{¶23} In Steele's first and second assignments of error, he claims that his convictions were based on insufficient evidence and were against the manifest weight of the evidence. These assignments of error are moot insofar as they contest the jury's verdict regarding the abduction counts. We therefore decline to address them.[28] As to the firearm specifications that accompanied the abduction counts,

---

[23] Id.
[24] See *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶97.
[25] Id.
[26] See *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 448 N.E.2d 452; *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804
[27] See *State v. Duncan*, 154 Ohio App.3d 254, 2003-Ohio-4695, 796 N.E.2d 1006 (double jeopardy does not bar retrial where reversal premised on erroneous jury instructions).
[28] See App.R. 12(A)(1)(c).

Steele is correct that the state failed to prove that he had had a firearm on or about his person when he had allegedly abducted Maxton. The state produced absolutely no evidence to this effect. But since specifications are penalty enhancements, and not criminal offenses, jeopardy does not attach and the state may proceed with prosecuting Steele for the firearm specifications on remand.[29]

### Intimidation

{¶24} Steele also claims that his intimidation conviction and accompanying firearm specification must be reversed. R.C. 2931.03(B), the intimidation statute, provides that no person, "by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a * * * witness in the discharge of the person's duty."

{¶25} The state presented evidence that, to compel Alicia's cooperation, Steele had filed a complaint against Maxton based on a confession that Steele knew was false. At trial, Maxton testified that he had not been involved in the robberies and that he had confessed only because Steele told him that, if he did not, his mother would be arrested and his siblings sent to a foster home. Maxton testified that Steele had told him what to say when he confessed. Finally, the state presented evidence that Steele had admitted that he had not believed that Maxton had been involved in the robberies before obtaining Maxton's confession.

{¶26} Viewing the evidence in a light most favorable to the prosecution, we find that the state proved all elements of the intimidation charge beyond a

---

[29] *State v. Ford* 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, paragraph one of the syllabus.

reasonable doubt.[30]  And although Steele presented a version of events that would have exonerated him, there is no indication that the jury "lost its way" in believing the state's version of events instead of Steele's.[31]  Steele's intimidation conviction is therefore affirmed.  The accompanying firearm specification, however, is reversed. The state presented no evidence that Steele had had an "operable firearm on or about his person" when he committed this offense.  Unlike the firearm specifications that accompanied the abduction counts, however, this firearm specification must be vacated.  It cannot be re-tried because it existed only as a penalty enhancement to the intimidation charge that we have affirmed.[32]  Steele's first and second assignments of error are therefore overruled in part and affirmed in part.

**{¶27}**  His remaining assignments of error are moot.

### Conclusion

**{¶28}**  Steele's abduction convictions are reversed and those counts are remanded to the trial court for a new trial, or for other proceedings consistent with law and this opinion. Steele's intimidation conviction is affirmed, but the accompanying firearm specification is hereby vacated, and the cause is remanded to the trial court with instructions to enter a sentencing order consistent with this opinion.

Judgment affirmed in part, reversed in part, and cause remanded.

**SUNDERMANN, P.J., HENDON** and **CUNNINGHAM, JJ.**

Please Note:

The court has recorded its own entry on the date of the release of this opinion.

---

[30] *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[31] *State v. Thompkins* 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541; *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
[32] See *Ford*, supra.