[Cite as *State v. Steele,* 138 Ohio St.3d 1, 2013-Ohio-2470.]

THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, *v.* STEELE,

APPELLEE AND CROSS-APPELLANT.

[Cite as *State v. Steele,* 138 Ohio St.3d 1, 2013-Ohio-2470.]

*Criminal law—Offenses—Intimidation—R.C. 2921.03—Abduction—R.C. 2905.02(A)(1) and (A)—Police officer not exempt from prosecution for offense of intimidation for abusing power to interrogate or for knowingly filing a materially false complaint to intimidate or influence witness—Jury instruction defining "privilege" in context of police officer's privilege to arrest and detain is not plain error when instruction is identical to definition of "privilege" in R.C. 2901.01(A)(12).*

(Nos. 2011-2075 and 2011-2178—Submitted March 12, 2013—Decided June 18, 2013.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Hamilton County, No. C-100637, 2011-Ohio-5479.

_____

O'NEILL, J.

{¶ 1} In this appeal and cross-appeal, we are presented with two issues. First, we consider whether police officers are exempt from prosecution for the offense of intimidation when accused of abusing their power to interrogate. We hold that R.C. 2921.03 provides no such exemption. A police officer may be convicted of intimidation when the state presents evidence that the police officer knowingly filed a materially false complaint in order to influence or intimidate a witness.

{¶ 2} Second, we consider what instructions a trial court must provide to a jury on the definition of the "privilege" exception to the offense of abduction when the defendant is a police officer accused of abusing his privilege to arrest and detain. We hold that when a trial court's definition of "privilege" is identical

to the definition provided in R.C. 2901.01(A)(12), such an instruction does not constitute plain error.

**Factual and Procedural Background**

{¶ 3} On May 26, 2009, police officer Julian Steele was indicted on ten counts, including abduction, intimidation, extortion, rape, and sexual battery. The charges stemmed from Steele's investigation of a series of six robberies that occurred in the same neighborhood in Cincinnati, Ohio. Shortly after one of the robberies, a resident in the neighborhood saw a vehicle driving suspiciously. The resident provided the vehicle's license-plate number to police, who linked the vehicle to A.M.

{¶ 4} The state presented evidence at trial that once Steele became aware that A.M. had children, he went to their school, arrested three children, and had their lockers searched. One of those children was R.M. Steele took R.M. into custody by handcuffing him and placing him in the caged back seat of a police cruiser. Steele told the school employees not to tell A.M. that he had taken R.M. into custody. Steele also told school employees the next day that he knew that R.M. was innocent. Although R.M. did not fit the physical descriptions of the robbers, Steele took R.M. to the police station and interrogated him extensively, using threatening and coercive tactics, prior to any attempt to offer him his constitutionally guaranteed *Miranda* warning. Specifically, after R.M. flatly and strongly denied knowledge of or involvement in the robberies, Steele threatened R.M. by telling him that his mother would be jailed and his siblings would be taken away if R.M. did not confess to the robberies. R.M. succumbed to the coercion and made a false confession. Steele then Mirandized R.M. and taped his confession.

{¶ 5} Using R.M.'s false statement, Steele was able to formally bring charges against R.M. for the six robberies and had R.M. imprisoned in juvenile detention.

**{¶ 6}** While R.M. was in detention, Steele repeatedly persuaded R.M.'s mother, A.M., to meet with him under the guise of talking about R.M.'s case and eventually convinced her to come to his apartment. Steele stated to A.M. that he would be able to get R.M. out of detention, but that it would involve quite a "process." During one of A.M.'s visits to Steele's apartment, Steele asked her to engage in sexual activity with him. A.M. testified that she complied with Steele's requests because she believed that he had the power over R.M.'s release.

**{¶ 7}** While R.M. was spending nine days in detention, Steele repeatedly told the assistant prosecutor that he knew that R.M. had nothing to do with the robberies, but that he had locked R.M. up in order to compel A.M. to cooperate with the investigation. The prosecutor mistakenly assumed that R.M. had been sent home on the day of his arrest. When, on the ninth day, she discovered that R.M. was still in lock-up, she immediately had R.M. released and dismissed his charges. The prosecutor's office then had Steele questioned about his actions. The state submitted a recording of the questioning, during which Steele admitted that he had excluded R.M. as a suspect prior to locking him up. Steele admitted that he thought R.M. had given a false confession. Steele admitted that he had told A.M. that he did not think R.M. committed any of the robberies. Steele stated that he does not make arrests solely based on witness identification, but instead he utilizes the technique called "bullshitting," which apparently refers to arresting people on less than probable cause in the hope that something promising will result.

**{¶ 8}** Steele was charged with two counts of abduction, three counts of extortion, two counts of rape, one count of sexual battery, and two counts of intimidation, all with firearm specifications. A jury trial was held, and Steele did not testify.

**{¶ 9}** At the close of the evidence, the parties and the court discussed alterations to the proposed jury instructions. The court provided the revised jury

instructions to the parties, and counsel for Steele stated that the instructions "look fine, and they incorporate all of the changes that we discussed yesterday." Pursuant to the agreed-upon jury instructions, the trial court provided the jury with definitions for "privilege," "arrest," "probable cause," and "reasonable grounds," as they are used in R.C. 2905.02, 2901.01(A)(12), and 2935.03.

{¶ 10} The trial court defined "privilege" as "an immunity, license, or right conferred by law or bestowed by express or implied grant or arising out of status, position, office, or relationship or growing out of necessity." The trial court stated that when an arrest is made without probable cause, it is an illegal arrest. The trial court instructed that probable cause exists "when an officer has knowledge of existing facts and circumstances which would warrant a prudent police officer in believing that a crime was committed, and that the person to be arrested has committed the crime." The trial court then explained that a police officer has the authority to arrest and detain a person if the police officer has reasonable grounds to believe that the person is guilty of committing a crime. Steele had no objections to the foregoing explanations.

{¶ 11} The jury found Steele guilty of abduction of R.M. in violation of R.C. 2905.02(A)(1) and (A)(2) and intimidation of R.M. in violation of R.C. 2921.03, each with an accompanying firearm specification. The jury acquitted Steele on the remaining charges. He received a prison sentence of five years and an additional five years of community control.

{¶ 12} On appeal, the First District Court of Appeals rejected Steele's arguments that his intimidation conviction was not supported by sufficient evidence and was against the manifest weight of the evidence and affirmed the conviction. The appellate court reversed Steele's abduction convictions, however, holding that the trial court's instructions to the jury on the offense of abduction were fatally deficient. The appellate court held that the trial court should have explained to the jury that a police officer loses the privilege to arrest and detain a

citizen only if he does not have a good-faith belief that there is probable cause for the arrest. "In essence," the court held, "the jury was instructed that an officer loses the privilege to arrest when the arrest is made without probable cause." *Id.* at ¶ 9. The appellate court concluded that because Steele's conviction hinged on whether Steele's actions were in good faith, the deficiency in the instructions rose to the level of plain error, requiring reversal despite Steele's agreement to the instruction.

{¶ 13} The appellate court dismissed Steele's sufficiency and manifest-weight arguments regarding the abduction convictions as moot. Finally, the appellate court reversed all of the gun specifications, as no evidence had been presented at trial that Steele had a firearm on or about his person when he committed the offenses. The appellate court thus partially reversed and remanded the case for a new trial on the charges of abduction.

{¶ 14} Both the state and Steele sought this court's discretionary review. In case No. 2011-2075, we accepted the state's appeal regarding the appellate court's reversal on the issue of jury instructions on the offense of abduction. 131 Ohio St.3d 1472, 2012-Ohio-896, 962 N.E.2d 803. In case No. 2011-2178, we accepted Steele's delayed appeal regarding his intimidation conviction. 132 Ohio St.3d 1422, 2012-Ohio-2729, 969 N.E.2d 270. The two cases were consolidated, and the state's appeal was designated a cross-appeal. *Id.*

## Analysis
### Intimidation and Police Officers

{¶ 15} R.C. 2921.03(A) provides:

No person, knowingly and by force, by unlawful threat of harm to any person or property, or by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner,

shall attempt to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of the person's duty.

{¶ 16} Steele proposes that a police officer cannot be prosecuted for the offense of intimidation, in violation of R.C. 2921.03(A), based on actions taken by the police officer while conducting an interrogation. We disagree.

{¶ 17} In our examination of R.C. 2921.03, we begin by noting that our "paramount concern is the legislative intent in enacting the statute." *State v. S.R.*, 63 Ohio St.3d 590, 594, 589 N.E.2d 1319 (1992). We must give effect to the plain meaning of the words used in a statute, and we must not modify an unambiguous statute by adding or deleting words. *Id.* at 595.

{¶ 18} R.C. Chapter 2921 criminalizes offenses committed against justice and public administration. "Chapter 2921 deals with acts tending to subvert the processes of democratic government, including bribery, perjury, and related offenses, crimes which hamper law enforcement and the administration of justice, and peculation, conflict of interests, dereliction of duty, and other offenses of public officials." Committee Comment to R.C. Chapter 2921, 1972 Am.Sub.H.B. No. 511. Thus, R.C. Chapter 2921 was separately enacted within Ohio's criminal code to focus on the special societal ills created by improper interference in the administration of justice or the discharge of a public duty.

{¶ 19} R.C. 2921.03 makes it unlawful for a person to knowingly take certain actions to influence, intimidate, or hinder a witness, a party official, or a public servant in the discharge of a duty. R.C. 2921.03(A). The ways in which it is illegal to exert such improper influence are by knowingly (1) using force, (2) unlawfully threatening harm against any person or property, or (3) using a materially false or fraudulent writing in any way with malice, bad faith, wantonness, or recklessness. *Id.* Thus, there are specified actions that are criminalized when committed against a specified set of people. However, there

are no such limitations as to the identity or status of the person who might commit the offense of intimidation.

{¶ 20} By contrast, the General Assembly has enacted various criminal statutes that provide exceptions for certain categories of people. For example, statutes prohibiting the possession or distribution of controlled substances provide a number of exceptions for certain authorized health professionals, police officers, and other parties. *See, e.g.*, R.C. 2925.02(B) (corrupting another with drugs); 2925.03(B) (trafficking offenses); 2925.11(B) (drug-possession offenses). The offense of coercion provides certain exceptions for prosecutors acting in good faith and in the interests of justice. R.C. 2905.12(B). Many weapons-possession statutes explicitly exclude authorized law-enforcement officers who are acting within the scope of their duties. *See, e.g.*, R.C. 2923.12(C)(1)(a) (carrying concealed weapons); 2923.121(B)(1)(a) (possessing a firearm in liquor-permit premises); 2923.122(D)(1)(a) (possessing a deadly weapon in a school safety zone); 2923.17(C)(1) (possessing a dangerous ordnance).

{¶ 21} We cannot add an exception to R.C. 2921.03 where there is none present. And by reading R.C. 2921.03 in light of the statutes in the preceding paragraph, we cannot presume that an exception to R.C. 2921.03 was intended when other statutes explicitly specify when police officers are exempted from certain offenses. *See S.R.,* 63 Ohio St.3d at 595, 589 N.E.2d 1319; *State v. Cunningham*, 113 Ohio St.3d 108, 2007-Ohio-1245, 863 N.E.2d 120, ¶ 20; *State v. Cook*, 128 Ohio St.3d 120, 2010-Ohio-6305, 942 N.E.2d 357, ¶ 45. "It always has been deemed necessary to enact laws to compel performance of duty and to prevent corruption on the part of public officers. They are not attended by any special presumption that general language in disciplinary measures does not extend to them." *Donnelley v. United States*, 276 U.S. 505, 516, 48 S.Ct. 400, 72 L.Ed. 676 (1928).

**{¶ 22}** Further, it is true that police may draw from a wide variety of interrogation tactics and may even use certain kinds of deception to elicit a confession. *See State v. Wiles*, 59 Ohio St.3d 71, 81, 571 N.E.2d 97 (1991); *Oregon v. Elstad*, 470 U.S. 298, 317, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). However, there is no authority for the contention that police officers may use physical force, unlawful threats of harm, or a materially false or fraudulent writing with malice, bad faith, wantonness, or recklessness as part of a legitimate interrogation of a suspect. Accordingly, we hold that a police officer may be prosecuted for the offense of intimidation when the police officer's actions during an interrogation satisfy the elements provided in R.C. 2921.03.

**{¶ 23}** The evidence submitted at Steele's trial indicated that despite Steele's repeatedly stated belief that R.M. was not involved in the robberies, Steele coerced R.M. into giving a false confession. Despite knowing that the confession was false, Steele filed a criminal complaint against R.M. using that false writing in an attempt to force R.M.'s mother to admit what he believed she knew about the robberies. Thus, Steele used a materially false writing in bad faith to influence and intimidate a witness within the meaning of R.C. 2921.03(A). We therefore affirm the First District's conclusion that Steele's intimidation conviction was supported by sufficient evidence and was not against the manifest weight of the evidence.

**Abduction, Privilege, Police Officers, and Plain Error**

**{¶ 24}** The state proposes that in the context of the offense of abduction, when a trial court provides a jury instruction defining "privilege" exactly as it is defined in R.C. 2901.01(A)(12), the trial court's failure to sua sponte provide additional, more specific instructions on "privilege" does not rise to the level of plain error. We agree.

**{¶ 25}** R.C. 2905.02 provides:

(A) No person, without privilege to do so, shall knowingly do any of the following:

(1) By force or threat, remove another from the place where the other person is found;

(2) By force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear.

{¶ 26} Thus, in order to convict a defendant for the offense of abduction, the finder of fact must determine that the defendant removed and/or restrained the victim by force or threat "without privilege to do so." R.C. 2905.02(A). "Privilege" is defined as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." R.C. 2901.01(A)(12). A police officer has a right conferred by law to execute a warrantless arrest of any person who the police officer has reasonable cause to believe is guilty of certain enumerated offenses, including theft offenses and offenses of violence. R.C. 2935.03(B)(1). A police officer has reasonable or probable cause to arrest when the events leading up to the arrest, "viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause. *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Probable cause exists when there are facts and circumstances within the police officer's knowledge that are sufficient to warrant a reasonable belief that the suspect is committing or has committed an offense. *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), citing *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925). If an arrest is made without probable cause, the arrest is constitutionally invalid. *State v. Timson*, 38 Ohio St.2d 122, 127, 311 N.E.2d 16 (1974).

**{¶ 27}** It is undisputed that the trial court provided accurate instructions on all of the above terms and that it followed the corresponding statutory language virtually verbatim. The appellate court concluded that the trial court erred by not providing additional instructions sua sponte. Specifically, the trial court explained when probable cause exists and when it does not. It explained that a privilege to arrest exists when there is probable cause, but it did not explain that the privilege is not lost merely because probable cause was lacking. It is this omission that the court of appeals found to be fatal.

**{¶ 28}** Under normal circumstances, the consequence of an illegal arrest is that evidence obtained therefrom is inadmissible at trial. *State v. Henderson*, 51 Ohio St.3d 54, 56, 554 N.E.2d 104 (1990), citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). However, a police officer is not automatically stripped of statutory privilege and exposed to criminal liability if a court finds in hindsight that the officer made an arrest on less than probable cause. When looking at a police officer's liability in the *civil* context, privilege is lost when "a reasonable official would understand that what he is doing violates [a clearly established] right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). We find this principle to be applicable to the context of a police officer's authority to arrest, pursuant to R.C. 2935.03, and correspondingly, the officer's "privilege" as defined in R.C. 2901.01(A)(12). Accordingly, a police officer does not lose the privilege to arrest merely because probable cause is lacking. However, the police officer loses the privilege to arrest when a reasonable police officer would understand that probable cause is lacking.

**{¶ 29}** It would have been ideal for the trial court to provide additional instructions regarding the loss of privilege in the specific context of a police officer's authority to arrest. However, it must be remembered that we are not looking for the ideal in this case. We are merely looking for the absence of plain error. There was no objection to the jury instruction in issue. "On appeal, a party

may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30(A). It is undisputed that Steele negotiated for and agreed to the revised jury instructions provided by the trial court, that he lodged no objections to the instructions related to the abduction charges, and that he has therefore forfeited all but plain error.

{¶ 30} For a court to notice plain error, the error must be an obvious defect in a trial's proceedings, it must have affected substantial rights, and it must have affected the outcome of the trial. *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891, ¶ 11, citing *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306; *State v. Lynn*, 129 Ohio St.3d 146, 2011-Ohio-2722, 950 N.E.2d 931, ¶ 13. *See also* Crim.R. 52(B). Because there was no explicit case law or statutory guidance in Ohio on the standard of proving a police officer's loss of privilege to arrest, it would be difficult to conclude that the trial court's failure to invent such an instruction constitutes an obvious error. Regardless, even when the minimum requirements have been met, a reviewing court should still be conservative in its application of plain-error review, reserving notice of plain error for situations involving more than merely theoretical prejudice to substantial rights. *See State v. Long,* 53 Ohio St.2d 91, 94, 372 N.E.2d 804 (1978). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶ 31} Here, the appellate court concluded that the lack of an instruction on loss of privilege amounted to plain error because "[i]t relieved the state of its burden to prove all elements of abduction beyond a reasonable doubt." 2011-Ohio-5479 at ¶ 21, citing *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 97. In *Adams*, we did note that relieving the state of its burden of proving an element of the offense violates a defendant's right to due process.

*Id.* However, we went on to hold in *Adams* that such an error in jury instructions is waived when there was no objection and when the outcome of the trial was not affected. *Id.* at ¶ 100 and 102. We have long held that improperly reducing the state's burden of proving an element of a crime is not plain error unless the outcome of the trial clearly would have been otherwise. *State v. Cooperrider*, 4 Ohio St.3d 226, 227-228, 448 N.E.2d 452 (1983); *State v. Underwood*, 3 Ohio St.3d 12, 14, 444 N.E.2d 1332 (1983); *Long* at paragraph two of the syllabus.

{¶ 32} Due to the trial court's failure to sua sponte provide additional instructions on "privilege," the appellate court determined that the jury was in essence instructed that a police officer could be criminally liable any time an arrest is made on less than probable cause. 2011-Ohio-5479 at ¶ 9. Certainly such an instruction would be erroneous. But the trial court did not provide any incorrect statements of the law in its instructions, and we cannot assume that the jury in fact made this improper inference.

{¶ 33} By concluding that an erroneous instruction, by itself, constituted plain error, the appellate court did not complete its plain-error analysis. Instead, "an appellate court must review the instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions." *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, ¶ 17. The totality of the instructions and of the record in this case does not support a finding of plain error, particularly when considering Steele's intimidation and abduction charges together.

{¶ 34} The facts underlying Steele's charge for abduction were inextricably intertwined with those underlying the charges for intimidation. He took R.M. out of school in handcuffs, placed him in an interrogation room, and blatantly intimidated him with dire threats directed at his entire family, including his school-aged siblings. Steele admitted to school employees, R.M.'s mother, and the prosecutor that he knew that R.M. was not involved with the robberies.

He coerced a confession from R.M., which he admittedly thought was false, and filed a criminal complaint against R.M. using that false confession.

{¶ 35} In order to be convicted of knowingly filing a false writing in satisfaction of the elements of the offense of intimidation, Steele needed to believe that R.M.'s confession was false, i.e., that R.M. had not committed the crime. If Steele believed that R.M. had not committed a crime, then a reasonable police officer in Steele's position would have understood that probable cause was clearly lacking. Thus, because Steele's accusation against R.M. had to be knowingly false in order for the jury to find Steele guilty of intimidation, and because the jury did find Steele guilty of intimidation, there is nothing to indicate that the trial court's failure to explain a higher standard of loss of privilege for police officers affected Steele's convictions for abduction. Further, there is nothing in the record to support the proposition that Steele had anything even approaching probable cause to arrest when he took this youngster out of school in handcuffs. At the very best, there was the suspicion that the child's mother's car had been used in the crime. No reasonable police officer could possibly categorize that as reasonable suspicion sufficient to satisfy the United States Constitution.

{¶ 36} Although we hold today that the trial court did not commit plain error in its failure to provide specific instructions for a police officer's loss of privilege, we must stress that we are in no way attempting to tie the hands of police officers in their broad authority to arrest and detain suspects. Police officers must often act quickly and decisively, as a delay in response could have dire consequences or even constitute dereliction of duty. *See Davis v. Scherer*, 468 U.S. 183, 196, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Police officers performing their valuable and often dangerous duties cannot be made to fear criminal charges any time an arrest or detention is made with what turns out to be less than probable cause. Thus, our holding today would reach only the rare

circumstance of a police officer depriving a person of his or her liberty *when a reasonable police officer would know that there is no probable cause supporting the detention, no matter how brief.*

{¶ 37} Because the trial court's erroneous jury instruction did not rise to the level of plain error, we reverse the First District's decision to reverse and remand Steele's abduction convictions.

**Conclusion**

{¶ 38} We hold that the First District Court of Appeals correctly upheld Steele's intimidation conviction, but incorrectly held that the definition of "privilege" provided by the Hamilton County Court of Common Pleas constituted plain error. We therefore affirm in part and reverse in part the judgment of the court of appeals and remand the cause to the First District Court of Appeals for consideration of the additional assignments of error that were mooted by its original holding.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

O'DONNELL, J., dissents and would affirm the judgment of the court of appeals.

_____

Daniel J. Breyer, Special Prosecuting Attorney, for appellant and cross-appellee.

Byron L. Potts & Co., L.P.A., and Gloria L. Smith, for appellee and cross-appellant.

Timothy Young, Ohio Public Defender, and Francisco E. Lüttecke, Assistant Public Defender, in support of neither party on behalf of amicus curiae, Ohio Public Defender.

_____