[Cite as *State v. Mockbee*, 2013-Ohio-5504.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                              :

    Plaintiff-Appellee,                 :      Case No.   12CA3496

    vs.                                      :

BRANDON MOCKBEE,                            :      DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.               :

_____

APPEARANCES:

COUNSEL FOR APPELLANT:       Fred S. Miller, 246 High Street, Hamilton, Ohio 45011, and
F. Joseph Schiavone, 6 South Second Street, Ste. 520,
Hamilton, Ohio 45011

COUNSEL FOR APPELLEE:        Mark E. Kuhn, Scioto County Prosecuting Attorney, and
Matthew A. Wisecup, Scioto County Assistant Prosecuting
Attorney, 612 Sixth Street, Ste. E, Portsmouth, Ohio 45662

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 12-11-13
ABELE, J.

{¶ 1}   This is an appeal from a Scioto County Common Pleas Court judgment of

conviction and sentence.   A jury found Brandon Mockbee, defendant below and appellant

herein, guilty of: (1) aggravated possession of drugs in violation of R.C. 2925.11(A)/(C)(1)(c);

(2) possession of drugs in violation of R.C. 2925.11(A)/(C)(2)(d); (3) two counts of aggravated

possession of drugs in violation of R.C. 2925.11(A)/(C)(1)(a); (4) theft of drugs in violation of

R.C. 2913.02(A)(1)/(B)(6); (5) two counts of receiving stolen property in violation of R.C.

2913.51(A)/(C); (6) grand theft in violation of R.C. 2913.02(A)(1)/(B)(2); (7) vandalism in

violation of R.C. 2909.05(B)(1)(b)/(E); (8) possession of criminal tools in violation of R.C.

2923.24(A)/(C); (9) breaking and entering in violation of R.C. 2911.13(A)/(C); and (10)

tampering with evidence in violation of R.C. 2921.12(A)(1)/(B).

{¶ 2}    Appellant assigns the following errors for review[1]:

FIRST ASSIGNMENT OF ERROR:

"THERE WAS INSUFFICIENT EVIDENCE TO PROVE THAT
MOCKBEE POSSESSED OXYCODONE AND
HYDROCODONE IN AN AMOUNT EQUAL TO OR MORE
THAN THE BULK AMOUNT."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF
DEFENDANT-APPELLANT WHEN IT DID NOT PROPERLY
INSTRUCT THE JURY REGARDING BULK AMOUNT."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF
DEFENDANT-APPELLANT WHEN IT DID NOT PROVIDE
COMPLETE JURY INSTRUCTIONS FOR COUNTS I, II V,
AND VI."

FOURTH ASSIGNMENT OF ERROR:

"THERE WAS INSUFFICIENT EVIDENCE TO JUSTIFY A
CONVICTION ON COUNT I (AGGRAVATED POSSESSION
OF DRUGS)[,] COUNT II (POSSESSION OF DRUGS) AND
COUNT III (AGGRAVATED POSSESSION OF DRUGS)."
FIFTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF

---

[1]  Appellant's brief does not include a separate statement of the assignments of error.    See App.R. 16(A)(3).
Therefore, we take the assignments of error from the brief's table of contents.

DEFENDANT-APPELLANT WHEN IT REFUSED TO MERGE LIKE AND SIMILAR CONVICTIONS."

SIXTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT PERMITTED THE JURY TO HEAR A TAPE RECORDED TELEPHONE CALL BETWEEN APPELLANT AND HIS GRANDFATHER, ALONG WITH A CONVERSATION BETWEEN APPELLANT AND A POLICE OFFICER."

SEVENTH ASSIGNMENT OF ERROR:

"EVEN IF ANY SINGLE ERROR IS NOT PREJUDICIAL, A CONVICTION MAY STILL BE REVERSED IF THE CUMULATIVE EFFECT OF THE ERRORS DEPRIVES THE DEFENDANT OF A FAIR TRIAL."

{¶ 3}   On July 24, 2011, at approximately 11 PM, a motion detection security camera recorded a break-in at Staker's Pharmacy in Portsmouth, Ohio.   Although the security cameras had a "cellar backup system" designed to call 911 in the event of compromised security system lines, that backup system did not operate on that particular evening.   The security system did, however, detect various people entering and exiting the establishment between 11 PM and 1:12 AM.   A number of items, including over-the-counter (OTC) medications and scheduled narcotics, were stolen from the pharmacy.

{¶ 4}   When reviewing a security tape, Scioto County Sheriff's Department Detective Denver Triggs recognized that a vehicle's custom-made "wheels" (shown on a vehicle driving in the area)   belonged to either appellant or to his girlfriend, Jamie Ruggles.   Deputy Triggs checked the license and registration address of the vehicle on the "OLEG" system and, the next morning, verified the address of the vehicle's location.   After seeing the vehicle's custom-made

wheels at the residence, Deputy Triggs obtained and executed a search warrant that uncovered a number of stolen OTC medications from the residence (shared by appellant and Ruggles), as well Adderall found in a purse that belonged to Stacey Clark-Jackson, who also stayed at the residence.

{¶ 5}   The Scioto County Grand Jury returned a twelve count indictment that charged appellant with the above mentioned offenses.   At trial, Steve Staker, a Staker's pharmacist, testified that, inter alia, over 2,600 doses of Oxycodone and Hydrocodone were stolen.[2]   The prosecution adduced testimony from Philip Jackson and Justin Adkins, both of whom appellant recruited to perpetrate the theft.   Both men testified that appellant persuaded them to go to Staker's after he had discovered the break-in between late July 24th and the morning of July 25th, 2011.[3]   Jackson testified that he grabbed the "already bagged up" prescriptions and that in, what Staker referred to, as the "will-call bin."   When asked why he did not take the large pill bottles behind the pharmacy counter, Jackson explained that they "were already gone."   He further testified that he had no idea at that time what medications the bags contained.   Indeed, except for the Adderall that Jackson took for his wife, no clear evidence was adduced at trial to show the contents of those bags.   When Staker was asked about the prescriptions in the will-call bin, he said they contained a "variety of everything."   The only drug he could specifically identify, however, was Adderall.

---

[2] Although the witness bears has the same last name as the pharmacy, Staker testified that his uncles own the business.

[3] Adkins admitted during the trial that he pled guilty to charges stemming from this incident in exchange for his testimony against appellant.    Jackson pled guilty in exchange for a sentence of a little less than five years.

{¶ 6}   The defense presented little evidence, except for Devany McElroy, a former Staker's technician.   McElroy admitted that at the time of the events, she, too, had stolen drugs from the pharmacy (Percocet Oxycontin??).   It appears that the most compelling defense evidence came from Detective Triggs.   Defective Triggs, on cross-examination, admitted that (1) no evidence shows that appellant possessed controlled substances taken from the drugstore, (2) the only evidence to connect appellant to any "dangerous drugs" is the Adderall in Stacey Jackson's purse, (3) appellant did not enter Staker's pharmacy, nor did he "pop" the pharmacy door, and (4) a crowbar and other "criminal tools" taken from appellant that formed the basis of that charge, were not used to break into the pharmacy.

{¶ 7}   Detective Triggs also testified about his belief that a "lot more" people had been involved in the Staker's break-in, both that evening and in the early morning hours the following day.   Indeed, the witness agreed that the surveillance tapes showed "four different teams, for a total of seven" people enter Staker's after the 11 PM break-in.

{¶ 8}   On re-direct, Detective Triggs testified that he had no evidence that anything had been removed from Staker's prior to 12:35 AM when he observed two intruders "carr[y] something out of the store[.]" He also stated that he did not see anyone else on the videotape carry anything out of the store.   The witness did not identify either intruder, but Adkins testified that he and Jackson were at the scene sometime between 12 AM and 1 AM in the morning.

{¶ 9}   The trial court denied appellant's Crim.R. 29 motion to dismiss many of the charges.   The court did, however, allow an amendment to count ten to specify that the criminal

tool appellant used was his cell phone, rather than a "pry bar" as previously alleged.[4]

{¶ 10} After hearing the evidence, the jury found appellant guilty on all counts and the trial court sentenced appellant to serve a twenty year prison term for those convictions.   This appeal followed.

I

{¶ 11} We jointly consider appellant's first and fourth assignments of error because they raise similar arguments.   Appellant asserts that insufficient evidence exists to sustain his conviction on counts I, II, and III of the indictment.

{¶ 12} Our analysis begins with the principle that when reviewing for the sufficiency of the evidence, appellate courts must look to the adequacy of the evidence and whether such evidence, if believed by the trier of fact, supports a finding of guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997) at paragraph two of the syllabus; *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). In other words, after viewing the evidence, and each inference reasonably drawn therefrom in a light most favorable to the prosecution, could any rational trier of fact find that all of the essential elements have been proven beyond a reasonable doubt?   *State v. Were*, 118 Ohio St.3d 448, 890 N.E.2d 263, 2008-Ohio-2762, at ¶132; *State v. Hancock*, 108 Ohio St.3d 57, 840 N.E.2d 1032, 2006-Ohio-160, at ¶34.

{¶ 13} Additionally, it is fundamental that evidence weight and credibility are issues that the trier of fact must determine. See e.g. *State v. Frazier*, 115 Ohio St.3d 139, 873 N.E.2d 1263,

---

[4] The prosecution's reasoning for characterizing appellant's cell phone as a criminal tool is evidence that he used it to call his girlfriend to tell her "we just found gold, baby."    The trial court allowed the amendment.

2007–Ohio–5048, at ¶ 106; *State v. Dye*, 82 Ohio St.3d 323, 329, 695 N.E.2d 763 (1998). Here, the jury, sitting as the trier of fact, could opt to believe all, part or none of the testimony of any witness who appeared before it. See *State v. Colquitt*, 188 Ohio App.3d 509, 2010–Ohio-2210, 936 N.E.2d 76, at ¶ 10, fn. 1 (2nd Dist.); *State v. Nichols*, 85 Ohio App.3d 65, 76, 619 N.E.2d 80 (4th Dist.1993).   The underlying rationale for deferring to the trier of fact on evidentiary weight and credibility issues is that the trier of fact is best positioned to view the witnesses, to observe their demeanor, gestures and voice inflections and to use those observations to weigh witness credibility. See *Myers v. Garson*, 66 Ohio St.3d 610, 615, 614 N.E.2d 742 (1993); *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 14} The case sub judice does not involve witness credibility or a challenge to the reliability of circumstantial evidence.   Rather, this is a case about the lack of evidence.

{¶ 15} At the outset, we note that no question exists about appellant's involvement in theft.   Adkins and Jackson both testified that appellant recruited them to go into the building and steal drugs.   Also, the search of appellant's residence revealed a container of Staker's OTC medications.   Detective Triggs also recognized, from a security tape, the distinctive wheels on appellant's vehicle.   Thus, even if appellant did not actually "pop" the pharmacy door or enter the pharmacy, he was at the scene and directed Adkins and Jackson to enter.[5]   However, orchestrating a theft is not the same thing as possessing stolen scheduled narcotics, particularly in light of the peculiar facts and circumstances of this case.

---

[5] Appellant admitted, in an interview with Scioto County Sheriff's Detective Jodi Conkel, that he was one "hell of . . . a good manipulator."   Apparently his subjects were not difficult to manipulate.    Adkins stated during his testimony that he only commits crime under "persuasion" from others.

{¶ 16} The October 25, 2011 indictment charged appellant with, inter alia, the following counts: (1) aggravated possession of drugs (Oxycodone); (2) possession of drugs (hydrocodone); and (3) aggravated possession of drugs (Methylphenidate[6]). The problem with these charges, and the resulting convictions, is that after our review we find no evidence in the record to prove that appellant possessed any of these drugs or prove the elements of these offenses. "Possession" means having control over a thing. R.C. 2925.01(K). Authorities did not find any of the above noted substances under appellant's control. They were not found on his person, in his vehicle or in his home. Indeed, they have not been found.

{¶ 17} The evidence reveals that the pharmacy door was "popped" at 11 PM, but the two individuals whom the detective identified as Jackson and Adkins did not enter the pharmacy for over another hour. Jackson testified that by the time they arrived the big pill bottles behind the pharmacy counter were gone. Detective Triggs also confirmed that the appellee's case against appellant is based on prescription drugs in the will-call bin, although Steve Staker testified that filled prescriptions in that bin included a "variety of everything." However, the only specific drug that Staker named is Adderall. In short, we are unable to find evidence that Oxycodone, Hydrocodone and Ritalin were in the bin the night before the break-in.

---

[6] The brand name of Methylphenidate is "Ritalin." See WebMD, Drugs & Medications - methylphenidate Oral, http://www.webmd.com/drugs/mono-94-METHYLPHENIDATE+-+ORAL.aspx?drugid=12114&drugname=methylphenidate+Oral (accessed Sep. 1, 2013).

{¶ 18} Moreover, even if we assume that these specific substances existed, no evidence indicates that they were on hand an hour and a half after the pharmacy had been broken into and after several instances when security had been triggered.[7] Furthermore, neither Jackson nor Adkins testified that appellant took these specific drugs when they divided the bin's contents. In conclusion, we agree with appellant's arguments under the two assignments of error because we find no evidence to support a conviction on these three counts.

{¶ 19} The presumption of innocence, as well as the requirement that criminal offenses must be proven beyond a reasonable doubt, are the bulwarks of our constitutional republic. See *United States v. Swinton*, 333 F.3d 481 (C.A.3 2003)(Rosenn, J. Dissenting). In the case sub judice, we believe that the evidence did not establish proof beyond a reasonable doubt of the elements of the crimes set forth in the indictment, namely counts I, II, and III that required a showing of appellant's possession or control of stolen narcotics.

{¶ 20} Accordingly, we hereby sustain appellant's first and fourth assignments of error.

II

{¶ 21} In his second assignment of error, appellant asserts that the trial court's jury instructions did not adequately explain the "bulk amount" definition regarding counts one and two. However, in view of the fact that appellant's conviction on those counts will be vacated, we disregard this assignment of error as moot. See App.R. 12(A)(1)(c).

---

[7] We acknowledge that Detective Triggs had no evidence that the scheduled drugs were stolen before 12:35 AM and that he did not see anyone walk out with them before that time. However, that is not the same as saying (definitively) they were not stolen before that time and that no one walked out with them. Again, the witness stated four different groups entered the pharmacy that evening for a total of seven people.

III

**{¶ 22}** In his third assignment of error, appellant asserts that the trial court erred when it did not give complete jury instructions regarding counts one, two, five and six of the indictment. Once again, in view of the fact that the convictions on counts one and two will be vacated, we disregard this portion of this assignment of error as moot.  See App.R. 12(A)(1)().

**{¶ 23}** We now direct our attention to the trial court's instructions on counts five and six.  Both parties argue that we should apply the plain error standard of review.  We view that as (1) appellee's tacit admission that the trial court gave incomplete instructions, and (2) appellant's tacit admission that no objection was made regarding the absence of complete instructions.

**{¶ 24}** When no objection is made to erroneous jury instructions, an appellate court's review is limited to whether the instructions amounted to plain error. See Crim.R. 52(B); *State v. Alexander*, 4th Dist. Adams No. 12CA945, 2013-Ohio-1913, at ¶27; *State v. Stephenson*, 4th Dist. Adams No. 12CA936, 2013-Ohio-771, at ¶23.  Appellate courts take notice of plain error with the utmost of caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.  *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, at ¶78; *State v. Patterson*, 4th Dist. No. 05CA16, 2006-Ohio-1902, at ¶13.  Plain error should only be noticed if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. See *State v. Bundy*, 4th Dist. Pike No. 11CA818, 2012-Ohio-3934, 974 N.E.2d 139, at ¶66.  The Ohio Supreme Court recently stated that appellate courts should be conservative in their application of plain-error review, reserving notice of plain error for situations that involve more than merely theoretical prejudice to substantial rights. *State v. Steele*, ___ Ohio St.3d ___, 2013-Ohio-2470, ___ N.E.2d ___,  at ¶30.  For the following reasons, however, we believe that

the instant case is an exceptional case and the recognition of plain error is warranted.

**{¶ 25}** Count five charged appellant with the theft of drugs under R.C. 2913.02(A)(1).

Theft is classified as a first degree misdemeanor, id. at (B)(2), unless the object of the theft is a

"dangerous drug," at which point it becomes a felony offense. Id. at (B)(6).   Count six of the

indictment charged appellant with receiving stolen property, which is typically a first degree

misdemeanor.   R.C. 2913.51(C).   However, if the property involved is, again, a "dangerous

drug," that offense becomes a fourth degree felony. Id.   Here, the jury found appellant guilty on

both counts, even though it did not receive a definition for "dangerous drug" for purposes of

these offenses.

R.C. 4729.01(F)(1) defines a "dangerous drug" for purposes of both offenses as:

"(1) Any drug to which either of the following applies:

(a) Under the "Federal Food, Drug, and Cosmetic Act," 52 Stat. 1040 (1938), 21 U.S.C.A. 301, as amended, the drug is required to bear a label containing the legend "Caution: Federal law prohibits dispensing without prescription" or "Caution: Federal law restricts this drug to use by or on the order of a licensed veterinarian" or any similar restrictive statement, or the drug may be dispensed only upon a prescription;

(b) Under Chapter 3715. or 3719. of the Revised Code, the drug may be dispensed only upon a prescription."

**{¶ 26}** Our review of the transcript confirms that the trial court did not define this term

for the jury.   It is axiomatic that a trier of fact cannot return convictions for crimes on which

received no instructions.   *State v. Chamblin*, 4th Dist. Adams No. 02CA753, 2004-Ohio-2252, at

¶¶12-13.   The appellee offers various counter-arguments why we should not recognize plain

error, despite the absence of the complete instruction.   We, however, reject those arguments for

the reason that no evidence demonstrates that appellant (1) deprived Staker's of a dangerous drug

for purposes of R.C. 2913.02(A), or (2) received, retained or disposed of a dangerous drug that he knew, or had reason to know, was taken from the pharmacy. Simply put, after our review of the record we find no evidence to link appellant to a "dangerous drug."

{¶ 27} We readily acknowledge that the prosecution adduced sufficient evidence to prove theft and the receipt of stolen property with regard to the OTC medications found in appellant's home. However, Detective Triggs conceded that no dangerous drugs were found on appellant's person. Also, Adderall is the only drug found in the home and Jackson admitted stealing the Adderall and giving it to his wife.

{¶ 28} Once again, notice of plain error should be taken when the error compromises the fairness, integrity or public reputation of judicial proceedings. Allowing convictions to stand for the theft of a dangerous drug, and receiving stolen property (dangerous drug) when no evidence connects the appellant to a dangerous drug, compromises the fairness of the proceedings. Therefore, we hereby sustain appellant's third assignment of error to this limited extent.

### III

{¶ 29} In his fifth assignment of error, appellant asserts that the trial court erred when it did not merge the count four conviction with counts five and six. However, having partially sustained appellant's third assignment of error, appellant's convictions on counts five and six will be vacated. Accordingly, we disregard this assignment of error as moot. See App.R. 12(A)(1)(c).

### IV

{¶ 30} Appellant's sixth assignment of error asserts that the trial court erred by allowing the jury to hear taped recorded conversations between appellant, his grandfather and Detective

Jodi Conkel.   Appellant contends that the recordings are more prejudicial than probative, and that the trial court erred by not excluding them from the evidence.   We disagree.

**{¶ 31}** Generally, a decision whether evidence is relevant rests in the trial court's sound discretion.   *Kurfess v. Gibbs*, Lucas App. No. L–09–1295, 2011-Ohio-2698, at ¶46.   Also, the decision whether the probative value of evidence outweighs its potential prejudice also lies in the trial court's discretion.   See e.g., *State v. Haynes*, 11th Dist. Ashtabula No. 2012–A–0032, 2013-Ohio-2401, at ¶¶49-51; *State v. Patterson*, 5th Dist. Stark No. 2012CA00098. 2013-Ohio-1647, at ¶48.   Consequently, the trial court's decision in the case at bar to allow the jury to hear the tapes will not be disturbed absent an abuse of discretion.

**{¶ 32}** Generally, an abuse of discretion is more than an error of law or of judgment; rather, it implies that a court's attitude is unreasonable, arbitrary or unconscionable.   See *State v. Clark*, 71 Ohio St.3d 466, 470, 644 N.E.2d 331 (1994); *State v. Moreland*, 50 Ohio St.3d 58, 61, 552 N.E.2d 894 (1990).   Under this standard, reviewing courts must not substitute their judgment for that of the trial court. *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 732, 654 N.E.2d 1254 (1995).

**{¶ 33}** With regard to the audio-taped conversation between appellant and his grandfather durng appellant's incarceration it is somewhat difficult to discern any probative value.   Appellant's grandfather berated appellant for his alleged activities.   By the same token, however, we also do not discern prejudicial effect.   From our perspective, if the tape had any impact at all, it may have been to cast some sympathy on appellant.   We also point out that appellant knew that his conversation was being recorded and that he could have terminated the conversation at any time.

{¶ 34} After our review, we are not persuaded that the trial court's decision to allow the jury to hear some of the conversation constitutes an abuse of discretion. We also point out that the trial court instructed the jury "not to consider the grandfather's berating the Defendant in any way."

{¶ 35} The other recording, an interview with Scioto County Sheriff's Detective Jodi Conkel, contains the following exchange:

"DETECTIVE CONKEL: He's coming down here when he gets done. They're still at your house. They're waiting on me to see if you were lying to us or not, to see what they're going to do with Jamie and the girls. So I've got to call them that your story don't match the rest of the peoples stories, that you want me to believe that you just happened to get lucky enough –

DEFENDANT: Listen –

DETECTIVE CONKEL: – to find a store broken into. You're telling me –

DEFENDANT: I swear that I did. Jodi, I use to break into stores.

DETECTIVE CONKEL: And then you – you find the that you find the bag lying there.

[DEFENSE COUNSEL OBJECTING]:Your Honor

DEFENDANT: I done everything from robbery to god damn safe-cracking.

DETECTIVE CONKEL: I seen that – I seen that.

DEFENDANT: To – to –

DETECTIVE CONKEL: And you know –

(BENCH CONFERENCE)"

{¶ 36} Appellant appears to admit prior criminal acts with the goal of bolstering his credibility in the eyes of the detective. Appellant argues that the trial court should have

excluded this evidence.   However, the transcript of the bench conference shows that the trial

court stated that "We can't play his record in."   Indeed, the court stopped the tape until counsel

could examine the parts that could come into evidence and the parts that should not be allowed.

Eventually, the appellee played a heavily edited version of the recording.

{¶ 37}  Appellant cites *State v. Paxton*, 110 Ohio App.3d 305, 674 N.E.2d 379 (6th

Dis.1995) that involved an environmental specialist's videotape (and some audio portions) at the

Ohio "EPA" when he investigated a defendant's activities on his property.   The judge was not

present when the tape was played and, despite an initial ruling that the tape was admissible under

a hearsay exception, the trial judge later concluded it was not.   Id. at 316.   The Lucas County

Court of Appeals held that allowing the tape into evidence constituted prejudicial error that a

limiting instruction could not cure because (1) comments on the tape were outside an exception

to the hearsay rule, (2) the tape contained the inspector's editorializing irrelevant to the charges

pending against appellant, and (3) the tape had greater prejudicial impact than probative value.

Id. at 318.

{¶ 38} For several reasons, we do not find *Paxton* a compelling precedent.   First, here

appellant himself made the prejudicial comments, rather than some third party, and they appear

to be little more than a self-serving attempt to persuade Detective Conkel of his veracity.   As a

general rule, criminal suspects should not be able to control the use of statements that they give

to authorities by simply blurting out or referencing past criminal activities.

{¶ 39} Second, in the case at bar the trial court instructed the jury "that any remarks the

Defendant may have made regarding past behavior are to be disregarded and not considered for

any purpose." Courts have long held that juries are presumed to follow limiting, or curative, instructions. See e.g. *State v. Martin*, 4[th] Dist. Scioto No. 04CA2946, 2005-Ohio-4059, at ¶17; *State v Wasmer*, 4[th] Dist. Jackson No. 714, 1994 WL 90400 (Mar. 16, 1994). Although *Paxton* found a limiting instruction insufficient to cure the prejudicial effect of that particular tape, all cases are different and in the case at bar we do not find that the remarks rise to that level.

{¶ 40} Third, in light of the OTC medications stolen from Staker's and found in appellant's home, we are inclined to agree with the appellee that this, if error, is more harmless than prejudicial error.

{¶ 41} For all of these reasons, we hereby overrule appellant's sixth assignment of error.

V

{¶ 42} In his seventh assignment of error, appellant asserts that his convictions should be reversed under the cumulative error doctrine.

{¶ 43} The cumulative-error doctrine states that a conviction will be reversed if the cumulative effect of all the errors in a trial deprive a defendant of the constitutional right to a fair trial, even though each alleged instance of error may not individually constitute cause for reversal. *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995); also see *State v. Jackson*, 4th Dist. Pickaway App. No. No. 11CA20, 2012-Ohio-6276, at ¶51.

{¶ 44} In the case sub judice, we have sustained two assignments of error and part of a third. Additionally, those rulings rendered moot two and one half other assignments of error. The only arguable error is the taped interview between Detective Conkel and appellant and, thus, we find no accumulation of harmless errors to consider invoking that doctrine. Thus, we hereby

overrule appellant's seventh assignment of error.

{¶ 45} Having sustained appellant's first and fourth assignments of error, and part of the third assignment of error, we hereby affirm, in part, and reverse, in part, the trial court's judgment of conviction and sentence.   Appellant's convictions on counts one, two, three, five and six of the indictment are hereby vacated and we remand this matter to the trial court for re-sentencing consistent with this opinion.

JUDGMENT AFFIRMED, IN PART, REVERSED, IN PART, AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

[Cite as *State v. Mockbee*, 2013-Ohio-5504.]

<u>JUDGMENT ENTRY</u>

It is ordered that the judgment be affirmed, in part, reversed, in part, and that the case be remanded for further proceedings consistent with this opinion. Appellant to recover of appellee the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J.: Concurs in Judgment & Opinion

McFarland, P.J.: Concurs in Judgment & Opinion as to Assignments of Error V & VI; Dissents as to Assignment of Errors I through IV.

For the Court

BY:_____

Peter B. Abele, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.