[Cite as *State v. Koebler*, 2014-Ohio-5283.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 101172

STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

WILLIAM KOEBLER

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-572527-A

**BEFORE:** E.T. Gallagher, J., Celebrezze, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** November 26, 2014

**ATTORNEY FOR APPELLANT**

J. David Ingersoll
Leader Bldg., Suite 458
526 Superior Avenue
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Alison Foy
       Ashley B. Kilbane
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, William Koebler ("Koebler"), appeals his drug possession convictions. We find no merit to the appeal and affirm.

{¶2} Koebler was charged with two counts of drug trafficking, in violation of R.C. 2925.03(A)(2), and five counts of drug possession, in violation of R.C. 2925.11(A), and 4729.51(C)(1), (C)(2), and (C)(3). The charges alleged that Koebler possessed and trafficked Percocet and Vicodin in amounts equal to or exceeding five times the bulk amount but less than 50 times the bulk amount.

{¶3} At a bench trial, Koebler's mother, April Pickard ("April"), testified that from July 28, 2011, through October 2012, April's then husband, Raymond Pickard ("Raymond"), was receiving prescriptions for 60 tablets per month of Vicodin from a physician at the Veterans Administration Hospital ("VA Hospital"). At the same time, he was also receiving monthly prescriptions for 90 tablets of Percocet from his private physician.

{¶4} April testified that Raymond received and filled his prescriptions every month and gave the drugs to Koebler, who sold them. Although April never observed any actual drug sales, she knew Koebler was selling the drugs because Koebler indicated he also wanted to sell April's prescription Percocet tablets. April admitted she allowed Koebler to sell her Percocet a few times before Raymond started receiving his prescriptions. She received some money as a result of these sales, and Koebler kept the rest. Koebler told April, "he could get rid of the pills any time that we had them."

{¶5} In the summer of 2012, April and Raymond were on the verge of divorce, and April moved out of the marital residence in September 2012. One month later, in October 2012, April reported Koebler's drug dealing of Raymond's prescription drugs to Agent Todd Springer

("Springer") of the Department of Veterans Affairs, Office of Inspector General, Criminal Investigation Division. April described the activity to Springer, who summarized it in a written statement. April signed and acknowledged the statement as a true and accurate account of her statement. She testified that during the relevant time period, she never observed Raymond ingesting any of his Percocet or Vicodin tablets. Instead, Raymond took Lyrica for pain so that Koebler could sell the Vicodin and Percocet tablets.

{¶6} Springer testified that he and Special Agent Jeff Maslar ("Maslar") interviewed Koebler while he was in jail awaiting trial on unrelated offenses. Koebler admitted to Springer that he sold Raymond's prescription Percocet and Vicodin tablets, but stated that he sold them at April's direction. Koebler told the agents that April took Raymond's prescription drugs and gave them to Koebler to sell. Koebler also stated that he did not make a profit on the Vicodin, but made 50 cents on the sale of each Percocet tablet. He told the agents that he used the profits to fund his own Percocet addiction and admitted that he knew it was wrong to sell the drugs.

{¶7} Springer summarized Koebler's statement in writing, and Koebler signed and acknowledged the statement as a true and accurate account of his statement under oath. Maslar testified that he observed Springer review Koebler's statement, line by line, and request that Koebler sign off on each page. After this, Koebler read the entire typed portion of the statement before signing his name to the document. Maslar testified that Koebler did not seem "upset or agitated in any way, shape, or form." According to Maslar, Springer made no threats or promises in exchange for his statement.

{¶8} Springer subsequently interviewed the prescribing physicians, Dr. Sami Moufawad ("Moufawad") and Dr. Muralidhar Pallacki ("Pallacki"), who both testified at trial. Dr. Pallacki is a gerontologist at the VA Hospital. He testified that he prescribed 60 tablets of Vicodin per month from July 28, 2011, through October 2012 for Raymond. Dr. Moufawad is a pain

management specialist at University Hospitals. He testified that he prescribed 90 tablets of Percocet per month from July 28, 2011, through October 2012 for Raymond. Raymond told both doctors that he was not receiving any other controlled pain medication. The doctors conceded they would not have given Raymond the prescriptions if they had known he was not taking them as directed.

{¶9} Dr. Moufawad testified that ordinarily he would have known that Raymond was receiving Vicodin from another physician through the Ohio Automated Rx Reporting System, a.k.a. OARRS. OARRS lists all the prescriptions a patient has previously filled at commercial pharmacies. Dr. Moufawad checks OARRS before giving patients prescriptions for pain medications and did not see any other pain medications being prescribed to Raymond. Moufawad testified that he later learned that the VA Hospital does not report to OARRS

{¶10} In December 2012, Springer and Maslar again met with Koebler as part of an unrelated drug investigation. The agents wanted to know if Koebler had any information regarding illegal narcotic activity in Twinsburg, Ohio. Koebler stated that he was not aware of any illegal drug activity in Twinsburg. Koebler also changed his prior statement. He told Springer that he was using Raymond's prescription medications himself and that he never sold the pills.

{¶11} Koebler testified in his own defense. He asserted his innocence, testified that he used the prescription medications himself, and denied ever selling drugs. He accused Springer of fabricating the contents of his first written statement and claimed that Springer promised he would not be in trouble if he gave the statement to the agents.

{¶12} At the conclusion of the trial, the court found Koebler not guilty of any counts of drug trafficking but guilty on three counts of drug possession. The court sentenced him to a

two-year prison term and imposed a $7,500 fine. Koebler now appeals and raises four assignments of error.

### Sufficiency and Manifest Weight of the Evidence

{¶13} We discuss the first, second, and fourth assignments of error together because they involve analysis of the same facts. In the first assignment of error, Koebler argues his convictions are not supported by sufficient evidence. In the second assignment of error, Koebler contends the trial court erred in convicting him because the state failed to prove every element of the offenses beyond a reasonable doubt. In the fourth assignment of error, Koebler contends his convictions are against the manifest weight of the evidence.

{¶14} The terms "sufficiency" and "weight" of the evidence are "quantitatively and qualitatively different." However, because they involve a similar analysis, we address them together while applying the distinct standards of review to Koebler's arguments. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶15} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶16} In contrast to sufficiency, "weight of the evidence involves the inclination of the greater amount of credible evidence." *Thompkins* at 387. While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at

386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Id.* The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses, to determine whether, "'in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶17} Koebler was convicted of drug possession in violation of R.C. 2925.11(A) and 4729.51(C)(3). R.C. 2925.11(A) states: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 4729.51(C)(3) states: "Except as provided in division (C)(4) of this section, no person shall possess dangerous drugs." Percocet (oxycodone) and Vicodin (hydrocodone) are Schedule II controlled substances. R.C. 3719.01(C) and 3719.41(A)(1)(n).

{¶18} R.C. 2925.01(D)(1)(d) defines "bulk amount" for Schedule II substances, in relevant part, as: "An amount equal to or exceeding twenty grams or five times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual." Springer testified that the bulk amount of Percocet is 60 tablets, and the bulk amount of Vicodin is 40 tablets. Koebler concedes that five times the bulk amount of Percocet is 300 tablets and five times the bulk amount Vicodin is 200 tablets.

{¶19} Koebler contends that although the state may have proved that he illegally possessed Percocet and Vicodin, there was no evidence that he possessed an amount between five times the bulk amount but less than 50 times the bulk amount. Koebler argues there was insufficient evidence to establish that he possessed these quantities because there was no evidence itemizing the number of tablets in his possession at any one moment in time.

**{¶20}** However, R.C. 2925.03(E) and 2925.11(G) provide, in relevant part:

> [I]t is unnecessary to find and return the exact amount of the controlled substance involved, and it is sufficient if the finding and return is to the effect that the amount of the controlled substance involved is the requisite amount, or that the amount of the controlled substance involved is less than the requisite amount.

Therefore, the state is not required to prove the exact amount of tablets Koebler possessed at a particular moment in time.

**{¶21}** In *State v. Robinson*, 8th Dist. Cuyahoga No. 64734, 1994 Ohio App.LEXIS 799 (Mar. 3, 1994), this court held that it is not necessary for the state to prove that the defendant possessed or trafficked the specified amount in the indictment at one moment in time. Rather, this court held that the state was only required to prove that the defendant possessed the alleged amount over a specified *period of time*.

**{¶22}** In *Robinson*, the defendant was charged with 45 counts of drug trafficking. Counts 1 through 15 alleged that he trafficked cocaine in an amount equal to or exceeding three times the bulk amount. Each count corresponded to a one-week period in which the defendant allegedly trafficked cocaine in an amount equal to or in excess of three times the bulk amount during the week. The state's chief witness testified that she observed the defendant sell 40 to 50 rocks of cocaine every weekday and 140 to 160 rocks per day on weekends.

**{¶23}** The defendant in *Robinson* argued there was insufficient evidence to establish that he trafficked cocaine in the amounts alleged in the indictment because there was no evidence that the sales were in amounts equal to or in excess of three times the bulk amount. In affirming the convictions, this court held that the state could aggregate a week of drug sales into one offense of a higher degree rather than multiple offenses of a lower degree for each separate day of the week. *Id*. at * 8-9. In reaching this holding, the court explained:

> Appellant is * * * not entitled to the less onerous possibility of charges, when more than one possibility exists. It is within the discretion of the state to charge defendants with the offenses it has the evidence to prove.

{¶24} This court also addressed this issue in *State v. DePompei*, 8th Dist. Cuyahoga No. 46838, 1984 WL 7191 (Feb. 16, 1984). In *DePompei*, the defendant was a physician who was charged with four counts of drug trafficking and 27 counts of illegally processing drug documents. The defendant was convicted on all counts based on testimony that he routinely wrote prescriptions to a certain individual with the understanding that the prescribed drugs would be sold. The witness who sold the drugs estimated that the defendant had written between 150 and 200 prescriptions.

{¶25} On appeal, the defendant argued the trial court erred in allowing the jury to aggregate separate transactions occurring over a period of one and one-half years for the purpose of establishing that the defendant trafficked in quantities exceeding the bulk amount. In affirming the convictions, this court reasoned that both parties knew that although each prescription was written for less than the bulk amount, the final quantities received and sold would exceed the bulk amount.

{¶26} The indictment in this case alleges that Koebler possessed at least five times the bulk amount of Percocet and Vicodin but less than 50 times that amount during the period of time between July 28, 2011, and October 31, 2012. The evidence showed that Raymond filled his monthly prescriptions for 40 tablets of Vicodin and 60 tablets of Percocet every month during that period. Thus, the undisputed evidence established that Raymond received a total of 1,440 Percocet tablets from Dr. Moufawad and 780 Vicodin tablets from Dr. Pallacki during the relevant time period.

{¶27} Koebler concedes that five times the bulk amount of Percocet is 300 tablets. Despite Koebler's contention that April "did not know the number of pills" Raymond gave to Koebler, April testified that Raymond gave *all* of his prescription Percocet and Vicodin tablets to

Koebler every month. She further stated that Raymond did not consume any of the drugs because he used Lyrica for pain instead so that Koebler could sell the Percocet and Vicodin.

{¶28} Furthermore, agents Springer and Maslar both testified that Koebler admitted that he received and sold Raymond's prescription drugs. Although he later denied selling the drugs when Springer and Maslar inquired about drug activity in Twinsburg, he still admitted that he received Raymond's prescriptions for his own personal use. Therefore, because there was both sufficient and credible evidence to prove that Koebler possessed more than five times the bulk amount of Percocet and Vicodin tablets during the relevant time period, the state proved every element of the drug possession charges beyond a reasonable doubt.

{¶29} Accordingly, the first, second, and fourth assignments of error are overruled.

### Ineffective Assistance of Counsel

{¶30} In the third assignment of error, Koebler argues he was denied his constitutional right to the effective assistance of counsel. He contends his trial counsel was ineffective for failing to proffer Koebler's own pharmacy records to show that he received his own valid prescription drugs. He also contends his trial counsel was ineffective for failing to timely move for a new trial based on newly discovered evidence.

{¶31} To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. A defendant must show that counsel acted unreasonably and that but for counsel's errors, there exists a reasonable probability that the result of the proceeding would have been different. *Strickland* at 696; *Bradley* at paragraph three of the syllabus. In

making this determination, the reviewing court must presume that counsel's conduct was competent. *Id.*

{¶32} Koebler argues his trial counsel was ineffective because he failed to produce evidence of Koebler's own lawful prescriptions for Percocet. He contends this evidence would have demonstrated that he "had an independent, legal source of Percocet pills." However, this evidence would have had no bearing on the fact that the evidence at trial proved he received Raymond's prescriptions and that those prescriptions, taken in the aggregate, exceeded five times the bulk amount, irrespective of any lawful source of additional drugs.

{¶33} Again, April testified that she observed Raymond give Koebler all of his prescription Percocet and Vicodin tablets every month. Thus, evidence of Koebler's own prescriptions would not have helped his defense. Indeed, the fact that Koebler had his own independent source of Percocet would have helped the state prove the trafficking charges in the indictment because it would have shown that Koebler had significantly more Percocet tablets than he could have consumed on his own. Therefore, trial counsel's decision not to proffer this evidence was likely part of sound trial strategy and was not the result of ineffectiveness.

{¶34} Koebler also argues his trial counsel was ineffective because he failed to file a motion for new trial based on newly discovered evidence. He contends his trial counsel should have moved for a new trial based on the newly discovered evidence that Koebler had his own valid prescriptions for Percocet. However, his prescriptions were not "newly discovered."

{¶35} Crim.R. 33, which governs grounds for a new trial, provides that the trial court may grant a new trial "when new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial." Koebler knew he had his own prescriptions for Percocet prior to trial and therefore was not prevented from discovering this evidence. Furthermore, as previously discussed, the evidence would not have

changed the outcome of the trial. Therefore, Koebler's trial counsel was not ineffective for failing to move for a new trial based on newly discovered evidence.

{¶36} The third assignment of error is overruled.

{¶37} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
TIM McCORMACK, J., CONCUR