[Cite as *State v. Makin*, 2017-Ohio-2649.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104010**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## HAKEEN K. MAKIN

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-594103-A

**BEFORE:** Laster Mays, J., Keough, A.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** May 4, 2017

**ATTORNEY FOR APPELLANT**

Richard Agopian
1415 West Ninth Street, 2nd Floor
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:    Marc Bullard
        Jennifer King
Assistant Prosecuting Attorney
Justice Center,    9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant, Hakeen K. Makin ("Makin"), appeals his jury trial conviction and sentence on multiple drug related counts. We affirm the trial court's decision.

## I. BACKGROUND AND FACTS

{¶2} On March 13, 2015, a 28-count indictment was issued:

| Statute | Description | Disposition |
|---|---|---|
| 2925.03.A(1) | Trafficking Offense | Guilty - Jury |
| 2925.03.A(2) | Trafficking Offense | Guilty - Jury |
| 2925.11.A | Drug Possession | Guilty - Jury |
| 2925.03.A(1) | Trafficking Offense | Guilty - Jury |
| 2925.03.A(2) | Trafficking Offense | Guilty - Jury |
| 2925.11.A | Drug Possession | Guilty - Jury |
| 2925.03.A(1) | Trafficking Offense | Guilty - Jury |
| 2925.03.A(2) | Trafficking Offense | Guilty - Jury |
| 2925.11.A | Drug Possession | Guilty - Jury |
| 2925.03.A(1) | Trafficking Offense | Guilty - Jury |
| 2925.03.A(2) | Trafficking Offense | Guilty - Jury |
| 2925.11.A | Drug Possession | Guilty - Jury |
| 2925.03.A(2) | Trafficking Offense | Guilty - Jury |
| 2925.11.A | Drug Possession | Guilty - Jury/Rule 29 |
| 2925.03.A(1) | Trafficking Offense | Guilty - Jury |
| 2925.03.A(2) | Trafficking Offense | Guilty - Jury |
| 2925.11.A | Drug Possession | Guilty - Jury |
| 2925.03.A(1) | Trafficking Offense | Guilty - Jury |
| 2925.03.A(2) | Trafficking Offense | Guilty - Jury |
| 2925.11.A | Drug Possession | Guilty - Jury |
| 2925.03.A(1) | Trafficking Offense | Guilty - Jury |
| 2925.03.A(2) | Trafficking Offense | Guilty - Jury |
| 2925.11.A | Drug Possession | Guilty - Jury |
| 2925.03.A(1) | Trafficking Offense | Guilty - Jury |
| 2925.03.A(2) | Trafficking Offense | Guilty - Jury |

| 2925.11.A | Drug Possession | Guilty - Jury |
| 2925.03.A(2) | Trafficking Offense | Guilty - Jury |
| 2925.11.A | Drug Possession | Guilty - Jury/Rule 29 |

{¶3} The indictments resulted from a series of controlled drug buys, occurring on March 19, 2014 (Counts 1, 2, and 3, 26.4 grams cocaine); April 14, 2014 (Counts 4, 5, and 6, 27.6 grams cocaine); June 10, 2014 (Counts 7, 8, and 9, 56.8 grams cocaine); and June 20, 2014 (Counts 10, 11, and 12, 70.4 grams cocaine). Counts 13 and 14 are aggregate for the prior transactions. Counts 15, 16, and 17 relate to a fifth controlled buy that took place on July 8, 2014, involving 11.9 grams of heroin. Counts 18, 19, and 20 arise from a July 15, 2014 controlled buy involving 12 grams of heroin. Counts 21, 22, and 23 arise from a July 22, 2014 controlled buy involving 27.6 grams of heroin. Counts 24, 25, and 26 arise from an August 14, 2014 controlled buy involving 27.7 grams of heroin. Counts 27 and 28 are the aggregate counts for July 8, 2014, through August 14, 2014, including major drug offender specifications ("MDOs") under R.C. 2941.1410(A).

{¶4} Codefendant and ex-girlfriend Tiffany Harmon ("Harmon") was charged in complicity with Count 1 and agreed to testify in exchange for a plea agreement. The jury trial was held in December 2015. The trial court retained jurisdiction to determine the MDOs after the jury's verdict. Codefendant Derek I. Woods ("Woods") was found not guilty of all charges.

{¶5} Special agent Kirk Johns, Task Force Officers Luke Combs, and Michael Gardner were involved in the drug buys and testified regarding Makin's activities. The

state drug task force utilized a confidential "reliable" informant ("CI") to effect the transactions.

{¶6} The CI would contact Makin and arrange the transaction. The money was copied prior to use in the transaction and then given to the CI, the state conducted a "cursory search" of the CI and the CI's vehicle prior to the meeting. The task force agent trailed the CI to the meeting place where the event was recorded by audio, and/or video, and/or photographed. After the purchase, the CI met the task force agent to turn over the drugs, and another "cursory" search of the CI and the CI's vehicle was conducted. Harmon testified to participating in the first buy with Makin and the CI and that she completed the sale at Makin's direction.

{¶7} The CI was recruited for assistance in 2014 after the CI's sale of drugs to task force members. The CI told the task force that Makin was the CI's drug supplier. The CI would purchase, cut, and resell the drugs. An agreement was executed by the CI containing the terms and conditions of his CI status. Trial testimony included a detailed description of each controlled buy transaction.

{¶8} Counts 14, 28, and the schoolyard specifications for Counts 15 and 16 were dismissed pursuant to Crim.R. 29. The jury found Makin guilty of the remaining offenses. Makin was sentenced on the major drug specification to 11 years at the Lorain Correctional Institution. He was also advised of postrelease control. This appeal ensued.

## II. ASSIGNMENTS OF ERROR

{¶9} Makin presents 12 assignments of error. Each error is recited below, preceding the applicable legal analysis.

I. The appellant was denied his right to a jury trial guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution in determining the MDO Specification.

{¶10} Trafficking or possession of more than 100 grams of cocaine is an MDO. R.C. 2925.11(C)(4)(g) and 2925.11(C)(4)(f). According to R.C. 2941.1410(B), the trial court is required to determine the MDO specification. As we previously recognized, "[t]his appears to be inconsistent with the principle that elements necessary for a penalty enhancement must be found by the trier of fact, not the court." *State v. Dues,* 2014-Ohio-5276, 24 N.E.3d 751, ¶ 49 (8th Dist.), citing *State v. Fort*, 8th Dist. Cuyahoga No. 100346, 2014-Ohio-3412, 17 N.E.3d 1172, ¶ 28, and *Alleyne v. United States*, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). However, as was the case in *Dues*, we are not required to make a determination on that issue as the jury determined in Count 13 that the aggregate amount of cocaine exceeded 100 grams. *Dues* at ¶ 50.

{¶11} The first assigned error is overruled.

II. The appellant was denied due process of law and effective assistance of counsel when the trial court refused to order the state to provide an agreement with its key witness until the day of trial.

III. The appellant was denied due process of law, a fair trial, and effective assistance of counsel because the court did not order disclosure of an informant's identity.

{¶12} The second and third assigned errors are combined for purposes of judicial economy. We review the errors for an abuse of discretion, an indication that the

trial court's decision is unreasonable, unconscionable, or arbitrary. *State v. Jackson*, 8th Dist. Cuyahoga No. 93699, 2010-Ohio-3723, ¶ 7, citing *State v. Bays*, 87 Ohio St.3d 15, 1999-Ohio-216, 716 N.E.2d 1126, and *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 114 (1983).

{¶13} In May 2015, the state filed a Crim.R. 16(D) certification to maintain the confidentiality of the CI. Crim.R. 16(D) requires that the state establish one or more of the following elements:

(1) The prosecuting attorney has reasonable, articulable grounds to believe that disclosure will compromise the safety of a witness, victim, or third party, or subject them to intimidation or coercion;

(2) The prosecuting attorney has reasonable, articulable grounds to believe that disclosure will subject a witness, victim, or third party to a substantial risk of serious economic harm;

(3) Disclosure will compromise an ongoing criminal investigation or a confidential law enforcement technique or investigation regardless of whether that investigation involves the pending case or the defendant;

(4) The statement is of a child victim of sexually oriented offense under the age of thirteen; and

(5) The interests of justice require non-disclosure.

Crim.R. 16(D)(1)-(5).

{¶14} On November 3, 2015, the trial court entertained the Crim.R. 16(D) discussion on the record. The state sought to certify the CI's name, address, recordings, and or other reports that would lead to the CI's identity. The state also informed defense counsel that it would make the information available for defense counsel's viewing only,

in the event the state elected to use any of the information at trial. The state expressed concern that the disclosure would subject the CI to risk of harm by third parties possibly at Makin's request.

{¶15} The state also informed the court that, during the period of time that Makin was at large, Makin and a family member threatened "to hunt down the informant." (Tr. 65.) The trial court responded that the information indicated Makin already knew the CI's identity. The state said, "[h]e may have his ideas, he may not, maybe or maybe not." (Tr. 65.) However, the state indicated Makin would know for certain the identify of the CI if the information was revealed. The state further justified its position by describing Makin's escape attempts when tracked down and arrested.

{¶16} Defense counsel countered that the state failed to state reasonable, articulable grounds to support their motion, and that the state's emphasis on the statement of an unknown third party to the CI that Makin and his son said they were going to hunt down "the informant" is not directly attributable to Makin. The state also failed to establish additional Civ.R. 16(D) elements such as economic harm, ongoing investigations, or interest of justice. The court granted the certification based on the alleged threat of harm to the CI, the "extreme measures" taken by Makin during his attempt to evade arrest, and the fact that Makin had access to large amounts of funds.

{¶17} Defense counsel also argued that the consideration provided to the CI for participating in the buys had not been revealed. The state replied that it sent a request to a detective "in an effort to identify the deal" and inquired about the existence of any

"exculpatory information," and that the state had just sent a response to the defense's request via the "portal."

**{¶18}** The state then orally revealed some of the consideration involved, explaining that the consideration information was being revealed in a way that prevented identification of the CI. The state asserts on appellate review that it delivered the information on October 15, 2015, four weeks before the trial.

**{¶19}** Prosecutors are prohibited from concealing favorable evidence from the defense, however, "'[t]here is no general constitutional right to discovery in a criminal case.'" *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 60, quoting *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). It is further wholly within a trial court's discretion to delay "'disclosure of a prospective witness's identity in order to protect his or her safety.'" *Id.*, quoting, *Alvarado v. Superior Court*, 23 Cal.4th 1121, 1150, 99 Cal.Rptr.2d 149, 5 P.3d 203 (Cal.2000).

**{¶20}** Each of the controlled buys were observed by the agents. *Jackson*, 8th Dist. Cuyahoga No. 93699, 2010-Ohio 3723, at ¶ 9. Further, the CI actually testified in this case. We do not find any error or prejudice to Makin.

**{¶21}** To prevail on the ineffective assistance of counsel claim, Makin must demonstrate that counsel was deficient in some aspect of his representation, and there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Dues*, 2014-Ohio-5276, 24 N.E.3d 751, at ¶ 55, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "'Counsel's

performance will not be deemed ineffective unless and until the performance is proven to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.'" *Dues* at ¶ 57, quoting *State v. Iacona*, 93 Ohio St.3d 83, 105, 752 N.E.2d 937 (2001). Thus, in light of our finding that the errors are unsubstantiated errors, we do not find that counsel was ineffective.

**{¶22}** The second and third assignments of error are overruled.

IV.     The trial court erred by failing to give a correct accomplice testimony jury instruction, R.C. 2923.03(D).

**{¶23}** Makin argues here that the trial court erred in failing to give the correct accomplice testimony jury instruction relating to Harmon. The state correctly asserts that Makin failed to make this argument before the trial court, restricting our analysis to plain error. *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, 3 N.E.3d 135, ¶ 29.

> "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30(A).

*Dues* at ¶ 40.

**{¶24}** R.C. 2923.03(D) sets forth the proper instruction:

> If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
>
> "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed

complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.

"It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."

{¶25} After defining "accomplice" for the jury, the trial court informed them that the weight and testimony to be given to Harmon's testimony is up to the jury to determine based on all of the facts and circumstances. Addressing the statutory requirement, the trial court stated:

The testimony of an accomplice does not become inadmissible because of her complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect her *ability* and make her testimony subject to grave suspicion and require that it be weighed with great caution.

It is for you as jurors, in light of all the facts presented to you and from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.

(Emphasis added.) Thus, the word "ability" was employed instead of "credibility."

{¶26} R.C. 2923.03(D) requires that the trial court's recitation of the instruction "state substantially" the statutory instruction. "Jury instructions are to be viewed as a whole to determine whether they contain prejudicial error." *Dues,* 2014-Ohio-5276, 24 N.E.3d 751, at ¶ 43-44. To demonstrate plain error, Makin must point to "an obvious defect in a trial's proceedings" that "affected substantial rights," and " affected the outcome of the trial." *Id.* at ¶ 40, citing *Steele* at ¶ 30. In this case, the record indicates that the word "ability" in the verbal instruction was properly stated as

"credibility" in the printed jury instruction provided to the jury. As a result, Makin was not prejudiced by the misstatement during verbal jury instructions. *Dues* at ¶ 44.

{¶27} The fourth assigned error is without merit.

V. The trial court erred by failing to give a comprehensive instruction on informant testimony.

VI. The trial court erred by failing to instruct the jury that prior convictions could be used to evaluate the credibility of a witness.

{¶28} Makin's failure to make this argument before the trial court bars all but plain error. *Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, 3 N.E.3d 135, at ¶ 29. "A trial court's decision on jury instructions is treated with deference, and an appellate court will not reverse absent an abuse of discretion." *State v. Malone*, 8th Dist. Cuyahoga No. 101305, 2015-Ohio-2150, ¶ 44. The jury was aware of the CI's criminal history and benefits received for the testimony.

{¶29} The trial court's general instruction on witness credibility advised the jury to consider a broad range of factors including: candor and frankness, interest and bias the witness may have in the outcome of the case, and all other facts and circumstances surrounding the testimony that add or detract from a witness's credibility.

{¶30} The trial court also reminded the jury that:

[Y]ou are not required to believe testimony of any witness simply because I placed that witness under oath. You may believe or disbelieve all or any part of the testimony of a witness. So it's within your province to determine what testimony is worthy of your belief and what testimony is not worthy of your belief.

{¶31} The CI testified at the trial, revealing the CI's history of dealing drugs and the cocaine sale to narcotics agents that led to becoming a CI. The CI described the terms of the agreement with the drug task force to serve as a CI in the current case and then detailed the activities that took place prior to, during, and after each controlled drug buy. The CI admitted that the motive behind the testimony was to get out of trouble, that the narcotics agents provided input in the CI's favor during the CI's sentence in a separate case, and that the CI had not yet been charged or sentenced for the initial sale of cocaine to agents that led to his CI status.

{¶32} The fact that a CI has received promises or benefits does not mean that the testimony may not be believed. *Malone*, 8th Dist. Cuyahoga No. 101305, 2015-Ohio-2150, at ¶ 47, citing *State v. Covington*, 10th Dist. Franklin No. 06AP-826, 2007-Ohio-5008, ¶ 8. Further, as to both assigned errors, where the general instruction adequately covers credibility, there is no need for a special comment or instruction. *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E.2d 980, ¶ 117.

{¶33} Makin has not established prejudice, or that "but for" the trial court's failure to provide a confidential informant instruction, the outcome of the trial would have been different. *Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, 3 N.E.3d 135, at ¶ 30. The fifth and sixth assigned errors are without merit.

VII. Prosecutorial misconduct during closing arguments deprived Makin of a fair trial in violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Ohio Constitution.

**{¶34}** Makin offers that the prosecutor "denigrated" defense counsel by making personal and derogatory remarks by stating that defense counsel's arguments were "laughable." We disagree.

**{¶35}** Due to the absence of objection before the trial court, we again review for plain error. *State v. Slagle,* 65 Ohio St.3d 597, 605 N.E.2d 916 (1992). While a prosecutor is not permitted to express a personal opinion as to witness credibility, defendant's guilt, or otherwise refer to inadmissible evidence in support of an argument, prosecutors have "wide latitude" in presenting a closing argument. *State v. Wiley*, 8th Dist. Cuyahoga No. 99576, 2014-Ohio-27, ¶ 60-61, citing *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), quoting *State v. Stephens*, 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970).

**{¶36}** The remarks of a prosecutor constitute misconduct where they "prejudicially affected substantial rights of the defendant." *Wiley* at ¶ 58, citing *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 149, citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The barometer of this analysis "'is the fairness of the trial, not the culpability of the prosecutor.'" *Wiley* at ¶ 58, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

**{¶37}** "A prosecutor's comments are not to be taken out of context and 'given their most damaging meaning.'" *Wiley* at ¶ 61, citing *State v. Williams*, 8th Dist. Cuyahoga No. 2012-Ohio-1741, ¶ 12, and *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996).

**{¶38}** Makin cites page 1,887 of the transcript for the conduct complained of; however, the transcript contains fewer pages. A search of the transcript reveals the term at page 1588 where the prosecutor used himself as an example of why a drug dealer was used as a convincing confidential informant:

> STATE: Do you think I can go and infiltrate all these drug trades?
>
> I'll just walk out there and go, Hey, Hakeem, let's do this. Let's get some dope, get it on the table. Hold on, this is just a cell phone, don't pay any attention to it, I'm pointing it at your face. These are their arguments. Laughable.

(Tr. 1588.)

**{¶39}** Makin has made no showing that the remarks of the prosecutor affected the outcome of his trial. *Wiley* at ¶ 61. His seventh assignment of error is overruled.

> VIII. The appellant was denied the effective assistance of counsel and was not afforded his constitutional right to counsel pursuant to the Sixth Amendment and due process and a fair trial pursuant to the Fifth and Fourteenth Amendments of the United States Constitution.

**{¶40}** This argument stems from defense counsel's asserted failure to request the jury instructions discussed under prior errors in this opinion, and to object to the prosecutor's improper comments. To prevail here, Makin must show that counsel's representation fell below "an objective standard of reasonable representation and, in

addition, prejudice arises from counsel's performance." *Dues,* 2014-Ohio-5276, 24 N.E.3d 751, at ¶ 57, citing *Iacona*, 93 Ohio St.3d at 105, 752 N.E.2d 937. Our findings that Makin was not prejudiced by any of these asserted errors extinguishes this argument. The eighth assigned error lacks merit.

IX.    The appellant's convictions are against the weight of the evidence.

X.     The evidence was insufficient to convict the defendant of drug possession and drug trafficking.

{¶41}    Makin argues that his convictions are against the weight and sufficiency of the evidence. We combine the related ninth and tenth errors for response.

{¶42}    The Ohio Supreme Court has explained that, "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. An appellate court, "may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387.

{¶43}    The question of "whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148

(1955)." *Thompkins* at 386. It is "an inquiry about due process, * * * the resolution of which does not allow the court to weigh the evidence." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶44}** In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks,* 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375,¶ 25, citing *Thompkins* at 387. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

**{¶45}** After consideration of whether the evidence is sufficient as a matter of law, a manifest weight inquiry looks at whether the evidence was substantial enough for a jury to reasonably conclude that all of the elements of the alleged crime have been proved beyond a reasonable doubt. The appellate court sits "'as a thirteenth juror.'" *Thompkins* at 387, quoting *Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The appellate court reviews the entire record, considers the credibility of the witnesses, weighs the evidence and all reasonable inferences, and determines whether

the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Martin* at 175; *Leonard* at 68.

**{¶46}** In weighing the evidence, we consider whether a greater amount of credible trial evidence supports "one side of the issue rather than the other." *Thompkins*, 78 Ohio St.3d at 387, 1997-Ohio-52, 678 N.E.2d 541.

> It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." *Black's Law Dictionary* 1594 (6 Ed.1990).

*Id.* We sit as a "thirteenth juror," reviewing the entire record to determine whether the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

**{¶47}** The jury heard testimony from Harmon who was present at the first controlled buy, the task force members present at each of the controlled buys, testimony from the CI regarding each controlled buy, and both video and audio evidence of the buys. Testimony included the amount of the drugs purchased, the payment, and testing of the drugs to confirm chemical composition.

**{¶48}** Based on a thorough review of the record, we do not find that the verdict in this case is against the manifest weight of the evidence, nor is the evidence insufficient as a matter of law. The ninth and tenth errors are overruled.

XI.    Appellant's rights to due process and equal protection under the Ohio and United States Constitutions were violated when the state excluded an African-American juror without providing a satisfactory race-neutral reason and without the trial court correctly applying the law.

**{¶49}** In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986), the court determined that the exclusion of jurors on the basis of race denies a defendant's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. We will not disturb a trial court's ruling on a challenge under *Batson* unless it is clearly erroneous. *State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, 45 N.E.3d 208, ¶ 23, citing *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 53.

**{¶50}** A tripartite evaluation is made by a trial court where a defendant claims racial discrimination during peremptory challenges: (1) the defendant must make a prima facie showing that a prosecutor is engaged in racial discrimination; (2) if that burden can somehow be surmounted, the prosecutor must find a racially neutral explanation for the challenge; and (3) the court must consider all of the circumstances in determining whether the prosecutor's explanation is a pretext. *Johnson* at ¶ 23, citing *Batson* at 96-98.

**{¶51}** In *State v. Bolton*, 8th Dist. Cuyahoga No. 81638, 2003-Ohio-3020, Bolton was convicted of drug trafficking and appealed the removal of two African-American jurors. "Juror L" was excluded because his brother had a long criminal record, his son had previously been prosecuted, and the juror opined that the

crack cocaine sentencing laws were discriminatory as compared to powdered cocaine. *Bolton* at ¶ 9. The second peremptory challenge of an African-American juror was to "Juror C." A close family member of "Juror C's" was prosecuted for obstruction of justice relating to a homicide. The prosecutor informed the court that he personally worked on that case and it was extremely contentious, so the state believed "Juror C" was unable to remain fair and unbiased. *Id.* at ¶ 10.[1]

{¶52} The trial court, observing that two white jurors were also removed, held that the challenges were proper. *Id.* at ¶ 12. Bolton argued on appeal that permitting a peremptory challenge because a juror's relative was convicted of a crime "is inherently discriminatory, in light of statistics which demonstrate that blacks are convicted of crimes at a substantially higher rate than whites." *Id.* at ¶ 13. "[W]e decline[d] to address the defendant's specific contention, as we determined that the record was clear that the facts supported a "race-neutral peremptory challenge."

> Juror [L] was excused because his brother committed the exact same crime as the one the defendant was being tried for and because Juror [L] led the prosecutor to believe that his views on sentencing for crack cocaine were not favorable to the state's position. Further, Juror [C] was excused because of the particularly contentious nature of the prosecution between her grandson and the Cuyahoga County prosecutors office in connection with a very recent homicide investigation.

---

[1] The peremptory challenge to "Juror C" was not based on her statements that her son had been murdered 20 years earlier, her daughter was murdered 10 years earlier, and her son recently acquitted of child molestation charges. *Id.* at ¶ 10, fn. 2.

*Id.* at ¶ 13. We determined that there was no "intent to exclude the juror on the basis of race." *Id*. at ¶ 20.[2]

**{¶53}** Makin contests the peremptory removals of two African-American female jurors because of family members who had been charged with drug crimes. The first juror said that her son had been accused in a drug case but that she could fairly deliberate the current case. The trial court requested that the state supply a race-neutral reason for peremptory challenge of that juror. The state responded that "one of the detectives said that he may have been the investigator on the drug case."

**{¶54}** The second juror said that two cousins were imprisoned and her brother placed on probation for drug trafficking, but also stated she could be fair in entertaining the current case. The state's basis for the peremptory challenge was that the drug charges against the family members were the same type of charges currently before the trial court.

**{¶55}** Of the jury members ultimately selected, several responded during voir dire about their experience with criminal activities. No. 4's good male friend was shot and paralyzed due to drug related activity. No. 19 (African-American male) revealed that a close friend had been accused of a crime, that he did not know if the friend was treated fairly, but he could fairly decide the case. The son of No. 17 (African-American female) was charged with possession of drug paraphernalia and imprisoned. She did not

---

[2] The concurring opinion, recognizing the defendant's cited statistical disparity in black versus white convictions, explained that because the *Bolton* case challenge did not rely solely on the

know if he was treated fairly, but said that she could be fair during the trial. Of the three alternates, the brother of No. 2 has had drug issues and was treated fairly and she felt she could be fair in the current case.

**{¶56}** The trial court advised the state that it did not get the impression that either of the jurors indicated anything other than they could be fair and impartial. However, the trial court determined that, though the state "could have built a stronger record," the cited basis for removing the two jurors was a "race-neutral reason." Further, since there were six African-Americans left after removing the first two, "we do have respective of the jury not [sic] — of having [an] African-American component to it, so I'll deny the request."

**{¶57}** Based on the foregoing, the record does not support that the trial court's decision was clearly erroneous. "This deferential standard arises from the fact that step three of the *Batson* inquiry turns largely on the evaluation of credibility by the trial court." *State v. Davenport*, 8th Dist. Cuyahoga No. 95911, 2011-Ohio-4635, ¶ 18, citing *State v. Herring*, 94 Ohio St.3d 246, 257, 2002-Ohio-796, 762 N.E.2d 940, citing *Batson*, 476 U.S. at 98.

**{¶58}** The eleventh assignment of error is overruled.

XII. The trial court erred by aggregating the weight of the drugs in separate counts to meet the major drug offender specification.

---

criminal "relative exclusion," the trial court's ruling was correct.

{¶59} Makin's twelfth assigned error is the trial court's aggregation of the drugs involved in the multiple controlled buys. We find no merit to this argument.

{¶60} The state relies on *State v. Robinson*, 8th Dist. Cuyahoga No. 64734, 1994 Ohio App. LEXIS 799 (Mar. 3, 1994), where this court found an aggregation of transactions to achieve a maximum penalty imposition based on a sufficiency of the evidence analysis was proper. Robinson was indicted on 45 counts of aggravated drug trafficking with firearm and violence specifications. *Id.* at 1. A witness who allowed Robinson and his girlfriend to use her apartment to sell crack cocaine, testified that 40 to 50 rocks per day were sold during the week, and 140 to 160 rocks per day were sold on each weekend day. *Id.* at 4.

{¶61} Counts 1 through 15 charged Robinson with trafficking cocaine in an amount equal to or exceeding three times the bulk amount under the then current version of R.C. 2925.03(A)(7). Robinson argued that he should not have been indicted for 15 counts, each covering a one week period, first-degree felony for the drug sales where the evidence reflects "45 to 50 third or fourth degree felonies." *Id.* at 8.

{¶62} At that time, this court determined that the issue was a case of first impression in Ohio:

> Whether the [s]tate can aggregate a week of drug sales into one offense of a higher degree is a question of first impression for this court. We have been unable to find any authority to prevent the [s]tate from charging appellant for a course of conduct which took place over a week. Testimony existed to support the charges that appellant possessed, sold and prepared more than three times the bulk amount of cocaine, [75] unit doses or rocks of cocaine, over the course of *each* of the [15] weeks appellant

used Jones's apartment. It is not required that the prosecution prove that the entire quantity of cocaine was sold to one individual at one time. Appellant is also not entitled to the less onerous possibility of charges, when more than one possibility exists. It is within the discretion of the [s]tate to charge defendants with the offenses it has the evidence to prove.

(Emphasis added*.*) *Id*. at 8-9. Thus, it appears that the evidence supported the sale of the bulk amount per weekly count.

**{¶63}** We conducted a similar analysis in *State v. Koebler*, 8th Dist. Cuyahoga No. 101172, 2014-Ohio-5283. Koebler argued that the evidence was insufficient to show that he was in possession of 5 to 50 times the bulk amount, "as there was no evidence itemizing the number of tablets in his possession at any one moment in time." (R.C. 2925.11(A) and 4729.51(C)(3)). *Id* at ¶ 19.

**{¶64}** We determined that the state did not have to prove the exact number of illegal tablets possessed by Koebler at a particular time, based on R.C. 2925.03(E) and 2925.11(G):

[I]t is unnecessary to find and return the exact amount of the controlled substance involved, and it is sufficient if the finding and return is to the effect that the amount of the controlled substance involved is the requisite amount, or that the amount of the controlled substance involved is less than the requisite amount.

*Id*. at ¶20.

**{¶65}** Further building on our decision in *Robinson*, 8th Dist. Cuyahoga No. 64734, 1994 Ohio App. LEXIS 799, we determined that the state in *Koebler* need only prove that the defendant possessed the alleged amount over the "specified *period of time*." (Emphasis sic.) *Id*. at ¶ 20. The state provided sufficient evidence to show

that Koebler possessed more than five times the bulk amount during the July 28, 2011, to October 31, 2012 period cited in the indictment. Testimony demonstrated that Koebler received monthly prescriptions amounting to 1,440 Percocet and 780 Viocodin  tablets during the relevant time period, and that Koebler provided those to other witnesses for sale, constituting the bulk amount for the 13-month period. The trial court's decision was affirmed. *Id.* at ¶ 26-29.

**{¶66}** Thus, it appears that, to date,  the statutes have been construed to vest broad discretion in the prosecution to prepare counts so as to invoke the maximum penalty possible under the circumstances. As long as the evidence is sufficient to support the conviction, as long as the time periods are listed correctly in the indictments, the time period involved in aggregating evidence via cumulative events to meet the greater punitive penalty amount is irrelevant. *Id*. at ¶ 23. A different result would require clarification and intervention by the Ohio Supreme Court or legislative action.

**{¶67}** The final assignment of error is without merit.

## III. CONCLUSION

**{¶68}** Judgment is affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
PATRICIA ANN BLACKMON, J., CONCUR